## THE PEOPLE v. HUGH WOLCOTT.

*Criminal prosecution—Incompetent evidence—Want of exceptions—Ex-torted confessions—Excitement on the part of the accused—Arrest of witnesses in court—Collateral impeachment—Striking out testimony—Obligation to call witness named in information.*

Admission of incompetent evidence is not ground for setting aside a conviction if no exception was taken.

Confessions of guilt are inadmissible when persons, apparently acting by authority, obtain them by making respondent believe that he will get off easier by making them. So *held* where the confessions were made to persons who were allowed access to the prisoner's cell after midnight.

One of several persons accused of larceny showed some excitement while

the boots of those accused were being measured, to see if they cor-responded to tracks found at the scene of the crime. *Held*, that on his prosecution this fact was inadmissible as bearing upon the question of his guilt, particularly when given by persons prepossessed against him; and it was not res gestæ.

The arrest of respondent's witness, upon his leaving the stand, and in the presence of the jury, tends, in a criminal case, to pervert justice, and should not be permitted. And such an arrest may be considered in connection with other facts of similar tendency, such as the collateral impeachment of other witnesses for respondent.

Where the wife of a person accused of crime testifies in his behalf, and on cross-examination denies that she has herself been arrested for having been concerned in a crime, it is error to admit testimony to contradict her.

Striking out testimony that has been improperly allowed in a criminal case, and cautioning the jury not to be influenced by it, do not necessarily obviate its effects.

The prosecution in a criminal case cannot be required to call respondent's wife as a witness, in order that she may be cross-examined, even though her name has been indorsed on the information as one of the witnesses for the prosecution.

Exceptions before sentence from Kalamazoo. (Mills, J.) October 19.—October 24.

LARCENY. Conviction set aside.

*Oscar T. Tuthill* and *Howard & Roos* for respondent appellant. Confessions are not presumed to be voluntary when made by a person in jail and when his statement, after being made under pressure, was used by way of confession : *Dick v. State* 30 Miss. 593; *State v. Grant* 21 Me. 171; *Simon v. State* 5 Fla. 285 ; *Whaley v. State* 11 Ga. 123 ; *State v. Ostrander* 18 Ia. 435 ; *Hudson v. Commonwealth* 2 Duv. 531 ; *State v. Peter* 14 La. Ann. 521 ; *Peter v. State* 12 Miss. 31; *Commonwealth v. Curtis* 97 Mass. 574 ; *People v. Smith* 15 Cal. 408 ; *Stephen v. State* 11 Ga. 225 ; *Miller v. People* 39 Ill. 457 ; *Commonwealth v. Chabbock* 1 Mass. 144 ; *Wiley v. State* 3 Coldw. 362 ; *Newman v. State* 49 Ala. 9 ; 1 Greenl. Ev. §§ 219, 220.

Attorney General *Jacob J. Van Riper* for the People. Objections to the admission of evidence are not considered if no exception has been taken; *Snyder v. Willey* 33 Mich. 483; *Hill v. Robinson* 23 Mich. 26; *Manistee School Dist. v. Cook* 47 Mich. 112; voluntary confessions are admissible even though made to an officer while in custody: *People v. Rogers* 18 N. Y. 9; *Hawkins v. State* 7 Mo. 190; *Jane v. Com.* 2 Metc. (Ky.) 30; *Com. v. Mosler* 4 Penn. St. 264; *State v. Jefferson* 6 Ired. 305; *Cobb v. State* 27 Ga. 648; *State v. Kirby* 1 Strobh. 155; confessions are prima facie admissible, and it is for respondent to show that they are not so: Roscoe's Crim. Ev. 39; *Reg. v. Garner* 2 C. & K. 920.

COOLEY, J. Respondent was informed against and convicted of the larceny of a quantity of wheat. The theory of the prosecution was that respondent, in concert with several other persons, stole the wheat in the night-time from a granary, took it to market and disposed of it. The evidence was in part circumstantial, and in part consisted in the respondent's confessions.

When evidence of confessions was offered, counsel for respondent insisted that it must first be shown that the confessions were not obtained by means of threats or promises of favor. The trial judge appears to have assented to the propriety of this, and considerable evidence was taken on the subject, at the conclusion of which the confessions were allowed to be proven. No exception appears to have been taken to this, and for that reason if the evidence was incompetent the respondent could not now take advantage of the error. But, as the case must go back for a new trial, it is proper to say that we think enough was shown to render the confessions altogether inadmissible. If the statement of the respondent is believed, not only were promises of favor held out to him as an inducement to confess, but he was threatened with personal violence while in confinement, and though the party accused of the threats denies them, we find sufficient in the evidence of witnesses for the people

to convince us that the respondent was treated in a manner which was altogether unwarranted. It appears without dispute that in the middle of the night, after the officer who had arrested him had retired for much-needed rest, the respondent, instead of being allowed the like privilege of rest, was visited by three persons in succession, whose mission appears to have been to obtain confessions by impressing upon the mind of the respondent that it would be better for him, or he would get off easier if he made confession· None of these persons was the officer in charge; but their admission to the cell at such an unreasonable hour carried with it an implication of the officer's consent to their mission, and respondent could scarcely fail to be impressed that their assurances were made with full authority. No reliance can be placed upon admissions of guilt so obtained; for the very obvious reason that they are not made because they are true, but because, whether true or false, the accused is led to believe it is for his interest to make them. The cases of *State v. Phelps* 11 Vt. 116: s. c. 34 Amer. Dec. 672: *State v. Walker* 34 Vt. 296; *Hector v. State* 2 Mo. 166: s. c. 22 Amer. Dec. 454; *State v. Bostick* 4 Harr. 563; *State v. Guild* 10 N. J. 163: s. c. 18 Amer. Dec. 404; *Spears v. State* 2 Ohio St. 583; *Commonwealth v. Taylor* 5 Cush. 505; *Commonwealth v. Tuckerman* 10 Gray 190; *Smith v. State* 10 Ind. 106; *Miller v. People* 39 Ill. 457; *Cain v. State* 18 Tex. 387; *Davis v. State* 2 Tex. App. 588; *Van Buren v. State* 24 Miss. 512; *Jordan v. State* 32 Miss. 382; *People v. Barric* 49 Cal. 342; *State v. York* 37 N. H. 175; *Miller v. State* 40 Ala. 54; *Porter v. State* 55 Ala. 95; *State v. Whitfield* 70 N. C. 356 and *State v. Hagan* 54 Mo. 192, may all be cited in support of the views here expressed, and the list might easily be increased very considerably. The case of *Flagg v. People* 40 Mich. 706, has sufficient resemblance to the one before us to render what is there said in point, and we refer to it for a further expression of our own views on the general subject.

The prosecution gave evidence that tracks were found and

followed from where the wheat was taken, and that the boots of the accused parties were measured to see how they corresponded to the tracks. They were allowed also, against objection, to show that while this was going on the respondent seemed to be excited. From this excitement the jury were expected to draw inferences unfavorable to the accused. No doubt a guilty party might be excited under such a charge, and so might an innocent party be; and the probability that one or the other would be most affected by the accusation would depend so much upon individual mental and physical peculiarities that the mere fact of excitement affords no basis whatever for any deduction for or against the justice of the charge. But the evidence of excitement is peculiarly objectionable because it is likely to be given —as it evidently was in this case—by persons prepossessed with a belief in the guilt of the accused, and very certain from that fact to draw unfavorable inferences, and to have what they see magnified by their imagination. The case of *Dillin v. People* 8 Mich. 357, 371, which is relied upon as sanctioning the admission of such evidence, was different. The excitement testified to in that case was not connected with any accusation, but was so nearly cotemporaneous with the crime as to be provable as part of the res gestæ.

The following transaction appears by the record to have taken place on the trial:

George Harrison, being sworn as a witness for the defense, was asked, on cross-examination, whether he had ever been arrested, and whether he did not know that there was a warrant out for him, and whether he did not know that the sheriff had such a warrant then. The record then proceeds as follows:

*Counsel for Respondent.* "What did you insinuate that for?"

*Prosecuting Attorney.* "It is true."

The witness then left the stand, and was immediately arrested by the sheriff in court, in presence of the jury, and taken to jail.

*Counsel for Respondent to the Court.* "I would like to know what kind of a performance this is, for the sheriff to take my witness out of the court-room."

*The Court.* "You excused him from the stand, and he said he had a warrant for him, and he took him on the warrant."

*Counsel for Respondent.* "I supposed I had a right to have him here."

*The Court.* "Certainly; if you want to use him you may have him; he will be produced; it is a kind of performance that should not be indulged in, and the court is not responsible for the commission of it. If you desire to use the witness he will be produced for that purpose."

And he was subsequently produced in the sheriff's custody.

It is very plain that the court perceived the wrong of this theatrical arrest, and its necessary tendency to pervert justice, and it is to be regretted that he did not promptly and decisively rebuke it. No one can feel assured that a trial in the course of which such a transaction can take place, has been fair or just; there is a suggestion about it of brow-beating and terrorism that may have affected witnesses and jurors beyond what can be shown; and it was so entirely unnecessary to any proper purpose that it cannot be overlooked. It is proper also to consider it in connection with other things occurring on the trial which had a tendency in the same direction. The wife of the respondent was a witness for him. On cross-examination an effort was made to show that on another occasion she had been concerned in the larceny of a pair of shoes. She denied the facts imputed to her, and a witness was then permitted to contradict her, and detail the particulars of the alleged offense. The bringing in of this collateral matter was plainly erroneous, as the judge soon perceived, and he did what he could to correct the mischief by striking out the testimony and giving the jury proper caution respecting it. But it is not possible wholly to obviate the effect of such damaging evidence by mere cautions: the jury, unconsciously to themselves perhaps, will be more or less affected by it. Possibly, if this were the only error in the case we

might not be disposed to grant a new trial because of it; but in view of other proceedings which have been specified, we think a new trial demanded by the plainest principles of right.

A number of assignments of error have been passed over by us as not being sufficiently plausible to require attention. One only will be mentioned. The name of respondent's wife had been endorsed on the information as a witness for the People, and counsel for respondent insisted that she should be called by the People that the defense might have opportunity for cross-examination. The court declined, correctly as we think, to order this. The relationship of the witness to the accused was sufficient reason for excusing her.

A new trial is advised.

The other Justices concurred.