PEOPLE *v.* DUNNIGAN.

1. CRIMINAL LAW—EVIDENCE—ADMISSIONS—PRIVILEGED COMMUNICATIONS.

A letter from one in jail, accused of a crime, written to his wife, containing incriminating admissions and obtained by prearrangement between the sheriff and an acquaintance of respondent who visited him in jail and promised respondent to deliver the communication to the wife, but turned it over to the sheriff, is not a privileged communication under 3 Comp. Laws, § 10213.

2. SAME—CONFESSION.

While a confession obtained by improper threats or promises that may lead the accused to think it is for his interest to make a confession, regardless of its truth or falsity, is inadmissible, the letter was not subject to such objection.

Error to Hillsdale; Chester, J. Submitted October 21, 1910. (Docket No. 166.) Decided November 11, 1910.

William Dunnigan was convicted of murder and sentenced to imprisonment for life. Affirmed.

*Paul W. Chase* and *Frank M. Hall*, for appellant.

*Clayton A. Powell*, Prosecuting Attorney, and *Franz C. Kuhn*, Attorney General, for the people.

Brooke, J. Respondent was convicted of murder in the first degree, and is now serving a life sentence in the State prison at Jackson.

The record discloses the fact that two other men, Knox and Smith, were in custody awaiting trial, charged with the same homicide, when respondent was arrested and confined in jail charged with some petty offense. He had testified on the examination of Knox and Smith before the justice and at the trial in circuit court. The testimony he had given tended to incriminate Knox and Smith, and to show his own innocence. While respondent was in jail, Bibbins, undersheriff, and Stone, deputy sheriff, of the county, made an arrangement with one Wilcox, an acquaintance of respondent, to the effect that he, Wilcox, should, for a consideration, be admitted to respondent's cell for the ostensible purpose of cutting respondent's hair; that Wilcox should get what information he could from respondent, and turn it over to the sheriff. In pursuance of this plan, Wilcox was admitted to respondent's cell, and there suggested that, if respondent desired to communicate with his wife, he, Wilcox, would convey a letter to her. Acting upon this suggestion and relying upon the good faith of Wilcox, respondent wrote and delivered to him a letter addressed to Nora, his wife, which Wilcox immediately turned over to the sheriff. Respondent was then indicted for murder, and, upon his trial, the letter was offered and received in evidence, and was as follows:

"*Dear Nora:* I want to tell you something. If they ask you any questions, tell them that I got home at 12 o'clock, and if they ask you if I had a watch that night, tell them no, or no ring, if they should ask you, for I have

told them that Walter Knox got the watch and ring, for I had to do it in order to clear myself, and I guess I can if you will help a little. It will mean five years for Walter Knox and life for Smith, and I don't know how much for myself. Now, don't forget to stick to what I have told you, will you, for it will help me a lot. Now, do as I have told you.

"From WILL."

Objection was made to the admission of the letter upon the ground that it was a privileged communication between husband and wife, and also because it had been procured from respondent by artifice and fraud. The sole assignment of error is that the trial judge erred in admitting the letter.

It is urged on behalf of respondent, and an examination of the record leads us to believe, that the letter was the principal, if not the only tangible, evidence against the accused. The importance of the ruling is therefore apparent. We will first consider the question of privilege. There can be no doubt that respondent intended the communication to be for his wife only. It passed out of his control, and never reached hers. Is its admission as evidence forbidden by the statute? That portion under consideration provides:

"Nor shall either, during the marriage, or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage. * * *" 3 Comp. Laws, § 10213.

The identical question here presented was carefully considered in the late case of *O'Toole* v. *Insurance Co.*, 159 Mich. 187 (123 N. W. 795, 24 L. R. A. [N. S.] 802), where the authorities are cited and considered. In that case we said:

"And so it has been held, and, we think, correctly, that where the communication, oral or written, has, without collusion or voluntary disclosure, escaped the custody and control of the parties communicating, or the custody and control of their agents or representatives, it is not privileged."

Regarding the letter in question as a confession of guilt, was it admissible? It is urged on behalf of respondent that it was not, and the case of *People* v. *McCullough*, 81 Mich. 25 (45 N. W. 515), is cited. It must be admitted that certain language is found in that opinion which affords a basis for respondent's claim. There, in discussing confessions generally, this court said:

" But they must be voluntary, and without any influence being exerted by the officer, either of threats, promise, artifice, or duress."

This declaration is broader than was required for the determination of the case there under consideration, and we think, taken baldly and without explanation or qualification, it does not accurately state the law. From a review of all the authorities, it would appear that the true reason for the rule for the exclusion of involuntary confessions—*i. e.*, those obtained by improper threats or promises—is that, because of such threats or promises the accused is led to believe that it is for his interest to make the confession, regardless of its truth or falsity. *People* v. *Wolcott*, 51 Mich. 615 (17 N. W. 78); 1 Wigmore on Evidence, §§ 821, 822, and cases cited in note. The use of artifice, trickery, or fraud in inducing a confession will not alone render such confession inadmissible as evidence. If the artifice used involved a promise tending to induce a false confession, it would operate to exclude, not because of the trick, but because, by use of the trick or artifice, an untrue confession had been secured. 1 Wigmore on Evidence, § 841, and cases cited; 12 Cyc. p. 476, and cases cited.

Applying these principles to the case under consideration, it is apparent that the promise of Wilcox to carry a letter from respondent to his wife could in no manner have operated upon respondent's mind to induce him to falsely admit his guilt. The record discloses the fact that the letter was written by respondent himself, and it does not appear that its contents were suggested by Wilcox or

any other person.    While we feel constrained to hold that the learned circuit judge did not err in admitting the document, we do not wish to be understood as setting the seal of our approval upon the methods used in securing it. Those methods were distinctly reprehensible.    The presumption of innocence surrounds all persons charged with the commission of crime, and it is the duty of those charged with the custody and prosecution of such persons to treat them with fairness in order that the innocent may thereby be protected, and the guilty convicted and punished.    When such a course is followed, the dignity of the law is upheld and its administration is, as it should be, above criticism.

The conviction must be affirmed.

HOOKER, MOORE, MCALVAY, and BLAIR, JJ., concurred.