STERLING v KEIDAN

Docket No. 88204. Submitted January 14, 1987, at Detroit. Decided August 3, 1987.

Bruce Keidan, an attorney, represented Donald C. Sterling in Sterling's 1981 divorce action. Keidan, concerned about a possible malpractice action by Sterling, contacted his malpractice insurance carrier, which referred him to Stephen Tuuk, whose firm apparently handled the insurer's malpractice litigation. Keidan conferred with Tuuk and Tuuk mailed a follow-up letter to Keidan reflecting the contents of the conversation. Approximately a year later, Sterling asked Keidan for his divorce file because he wished to retain new counsel. Keidan inadvertently left a copy of the letter from Tuuk in the file when he gave it to Sterling. Sterling filed a malpractice action against Keidan and Keidan & Keidan, P.C., in Wayne Circuit Court alleging malpractice and breach of contract for Keidan's failure to negotiate a reasonable or favorable property settlement and failure to appeal various matters, including the property settlement. Sterling attempted to use the Tuuk letter in the litigation and to discover further correspondence between Keidan and Tuuk and sought to take Tuuk's deposition. Keidan moved for a protective order, claiming attorney-client privilege. The court, Marvin R. Stempien, J., granted the protective order with regard to Tuuk's representation of Keidan and communications between Keidan and Tuuk. The court also held that a waiver of the attorney-client privilege would not arise by accident. Sterling appealed by leave granted, claiming that Keidan permanently waived his attorney-client privilege as to the letter when he inadvertently gave Sterling a copy of it.

The Court of Appeals held:

There is a dual nature of the attorney-client privilege which applies to an inadvertent disclosure of privileged material. First, there is the security against publication of the information or knowledge by the attorney and, second, the right of the

REFERENCES
Am Jur 2d, Witnesses §§ 223 et seq.
Insured-insurer communications as privileged. 55 ALR4th 336.

client to control the introduction into evidence of such information or knowledge communicated to or possessed by the attorney. The latter right may exist although the former has ceased to be of any benefit. Waiver of the attorney-client privilege through inadvertent disclosure therefore requires a finding of no intent to maintain confidentiality or circumstances evidencing a lack of such intent. The facts of this case do not support such findings.

Affirmed.

1. ATTORNEY AND CLIENT — PRIVILEGE — WAIVER — INADVERTENT DISCLOSURE OF CONFIDENTIAL MATERIAL.

There is a dual nature of the attorney-client privilege which applies to an inadvertent disclosure of privileged material: first, there is the security against publication of the information or knowledge by the attorney and, second, the right of the client to control the introduction into evidence of such information or knowledge communicated to or possessed by the attorney; the latter right may exist although the former has ceased to be of any benefit.

2. ATTORNEY AND CLIENT — PRIVILEGE — WAIVER — INADVERTENT DISCLOSURE OF CONFIDENTIAL MATERIAL.

Waiver of the attorney-client privilege through inadvertent disclosure requires a finding of no intent to maintain confidentiality or circumstances evidencing a lack of such intent.

*Galbraith & Booms* (by *Steven B. Galbraith*), for plaintiff.

*Natinsky & Jaffa* (by *Leonard Natinsky*), for defendants.

Before: R. M. MAHER, P.J., and SHEPHERD and G. S. ALLEN, JR.,* JJ.

SHEPHERD, J. Plaintiff appeals by leave granted from an order holding that a document inadvertently released to plaintiff was nonetheless subject to the attorney-client privilege. We affirm.

Bruce Keidan (defendant), an attorney, repre-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

sented plaintiff in his 1981 divorce action. Concerned that plaintiff might file a malpractice suit against him, defendant contacted his insurance carrier, which advised him to contact attorney Stephen Tuuk, whose firm apparently handled the carrier's malpractice litigation. Defendant telephoned Tuuk and, on March 12, 1982, Tuuk sent defendant a three-page letter reflecting the contents of that conversation. The letter was labeled "personal and confidential" and enumerated "the facts surrounding a possible legal malpractice claim in a divorce action in which you 'represented' an incompetent client." It appears that a divorce judgment was entered in that case, which defendant subsequently determined plaintiff was incompetent to have understood. The letter outlined possible courses of action for defendant to protect plaintiff's rights.

Approximately one year later, plaintiff asked defendant for his divorce file as he wished to retain new counsel. Defendant inadvertently failed to remove the March 12, 1982, letter before giving plaintiff the file, which defendant describes as "fairly voluminous." Defendant claims he gave plaintiff the entire divorce file. Plaintiff claims, however, that defendant retained some correspondence and pleadings, thus arguing that defendant screened the file.

Plaintiff filed this suit on April 6, 1984, alleging malpractice and breach of contract for defendant's failure to negotiate a "reasonable" or favorable property settlement and failure to appeal various matters, including the property settlement. Defendant was not represented by Tuuk, but by a different attorney. According to plaintiff, his "present counsel attempted to obtain information from [defendant] concerning facts from the [March 12, 1982] letter and the Defendant expressly refuted

statements in the document." Plaintiff subsequently attempted to use the letter in this litigation and to discover further correspondence between defendant and Tuuk, and sought to take Tuuk's deposition. Defendant, however, moved for a protective order.

The trial court granted the protective order "with regard to Attorney Stephen Tuuk's representation of the Defendant, Bruce H. Keidan, and communications between Defendant Keidan and Attorney Stephen Tuuk are hereby deemed subject to the attorney/client privilege." In so concluding, the trial court held that a waiver of the privilege would not arise "by accident."

MRE 501 provides:

> Privilege is governed by the common law, except as modified by statute or court rule.

Michigan has long recognized the common-law privilege extending to communications between a client and an attorney. See, e.g., *Passmore v Passmore's Estate,* 50 Mich 626; 16 NW 170 (1883). Neither party maintains that defendant and Tuuk did not enjoy an attorney-client relationship sufficient to invoke the privilege with regard to the March 12, 1982, letter. Plaintiff maintains instead that defendant permanently waived his attorney-client privilege as to the letter when he inadvertently gave plaintiff a copy of it.

At issue is an implied waiver of the privilege. In a case involving the physician-patient privilege, *Kelly v Allegan Circuit Judge,* 382 Mich 425, 427; 169 NW2d 916 (1969), the Supreme Court noted:

> A true waiver is an intentional, voluntary act and cannot arise by implication. It has been defined as the voluntary relinquishment of a known right.

> There are some circumstances, however, wherein justice requires that a person be treated *as though* he had waived a right where he has done some act inconsistent with the assertion of such right and without regard to whether he knew he possessed it. This is the doctrine of estoppel. [Emphasis in original.]

*Kelly* involved an insurance company which denied liability on a life insurance policy, alleging material misrepresentations in the insured's application. The insurer sought to depose the decedent's attending physician. The trial court concluded that the physician-patient privilege had been waived "for discovery purposes" when the plaintiff submitted a letter from the doctor indicating he had treated the decedent. The Supreme Court, however, found no waiver as the statute governing the physician-client privilege described "only one circumstance wherein a plaintiff shall be 'deemed' to have waived the privilege" by producing the physician as the plaintiff's witness in a personal injury or malpractice suit.

While *Kelly* is instructive, the attorney-client privilege is a common-law rather than statutory privilege. Another Supreme Court case, although it also involved the statutory physician-client privilege, further illuminates the general theory of privileged communications in Michigan. In *Polish Roman Catholic Union of America v Palen,* 302 Mich 557; 5 NW2d 463 (1942), the issues also concerned alleged fraudulent statements in a life insurance application. The insurer sought to introduce the testimony of a physician who had treated the decedent prior to his insurance application, claiming waiver of the privilege when the decedent's estate "filed an affidavit of this physician making certain statements regarding his treatment of the insured which [the insurer] sought to

prove by the testimony of the physician at the trial." 302 Mich 561. Relying on an early case for support, the Supreme Court held that the privilege had not been waived by the filing of the affidavit:

> In *Briesenmeister v Supreme Lodge Knights of Pythias of the World,* 81 Mich 525 [535-536; 45 NW 977 (1890)], this court repudiated the theory that once the confidential information had been published, the privilege of objecting to its repetition had been waived, and this court declined to approve the argument that the consent once given could not be later recalled:
>
> "It seems to me that the argument loses sight of one of the rights conferred by the statute. Privilege includes both the security against publication, and the right to control the introduction in evidence, of such information or knowledge communicated to or possessed by the physician. The latter right exists although the former had ceased to be of any benefit. The public may know; but shall the jury be permitted to receive and weigh testimony derived from a source which the law has put the seal of silence upon, unless released by the party who alone has the right to say whether that particular witness shall be the medium of conveying such knowledge to the jury? For instance, the party may have disclosed to a third person all that he has to his physician. Now, while his admissions may be proved in a proper manner by such third person, they cannot be proved by the physician against the objection of the party. The privilege conferred is that the physician shall not disclose or testify to those matters which the statute inhibits without the consent of the party to whom the privilege is extended, and this objection may be interposed whenever and as often as the party's rights may be affected by proffered testimony, if the objection be timely made."
>
> In an action by a beneficiary under a life insurance policy, plaintiff's objection to a physician testifying as to an ailment concerning which he

had received confidential information was sustained by this court, notwithstanding plaintiff had previously signed a proof of loss authorizing the physician to testify in regard thereto. *Wohlfeil v Bankers Life Co,* 296 Mich 310 [296 NW 269 (1941)].

We believe this dual nature of the privilege applies to the situation of an inadvertent disclosure of privileged material. It is supported by the result in *Kubiak v Hurr,* 143 Mich App 465; 372 NW2d 341 (1985), a fact situation which presented an even stronger case for waiver. In *Kubiak,* the plaintiff's attorney wrote to the defendants requesting a retraction of several allegedly defamatory statements. Defendants countered with a letter denying the plaintiff's allegations and the plaintiff's attorney responded with a third letter. When the plaintiff filed her law suit, the defendants counterclaimed against plaintiff and sued her attorney for defamation based on the excessive pretrial newspaper publication of the letters and the statements. The issue appealed in *Kubiak* was the denial of the defendants' motion to disqualify the plaintiff's attorney because he would be called as a witness. In deciding that plaintiff's attorney should not be called as a witness in the action against his client, this Court found that his testimony concerning the plaintiff's state of mind in having the letters published would be prohibited by the attorney-client privilege. The Court also decided that publication of the prelitigation letters did not waive that privilege, holding that "the mere publication of letters containing facts which had been communicated by [the plaintiff] to her attorney did not waive the privilege attaching to the communication itself." 143 Mich App 474.

We recognize that there are dissimilarities between this case and *Palen* and *Kubiak.* The lan-

guage in both cases prohibits further disclosure of information by the person to whom the privileged communication is made. Thus, in the *Palen* hypothetical, when the party has "disclosed to a third person all that he has to his physician," those disclosed facts can still be admitted "in a proper manner by such third person." It is apparently only the physician's testimony as to those same facts that is foreclosed. In *Kubiak*, the parties apparently assumed that the statements and letters themselves were admissible. In fact, those same allegations formed the basis of the plaintiff's complaint in *Kubiak*, effectively waiving any privilege. What was foreclosed was testimony concerning additional statements, made by plaintiff to her attorney at the time the letters and original statements were published, which additional statements presumably were not published.

By analogy, it might be argued that all that is foreclosed in this case is Tuuk's testimony concerning matters defendant confided to him. Defendant, having given the letter to plaintiff, however inadvertently, might appear to be in the position of the party in *Palen* who disclosed confidential information to a third party, and it might be argued that information actually disclosed could now be proven in a "proper manner." Such an interpretation, however, runs afoul of the application of justice to the doctrine of implied waiver by estoppel utilized in *Kelly*. The discussion in *Kelly* concerning implied waiver must be read together with the discussion of "true waiver." The hypothetical in *Palen* and the facts of *Kubiak* concerned *intentional* disclosures, not inadvertent ones. We believe the dual nature of privileges recognized in *Palen* requires certain circumstances similar to those of a "true waiver" before the second aspect of the privilege, the right to control the introduc-

tion of privileged matter into evidence, will be destroyed following elimination of the first aspect of the privilege, security against publication. At the very least, waiver through inadvertent disclosure should require a finding of no intent to maintain confidentiality or circumstances evidencing a lack of such intent.[1] See Note, *Inadvertent disclosure of documents subject to the attorney-client privilege*, 82 Mich L Rev 598, 605-606, 616-619 (1983). See also 97 CJS, Witnesses, § 310, p 856, stating that there must be a distinct and unequivocal waiver and that the intent to waive must be expressed by word or act or omission to speak or act. See also *Beasley v Grand Trunk W R Co*, 90 Mich App 576, 597; 282 NW2d 401 (1979), in which this Court held that a decedent's request that a physician transmit his physical examination results to a university waived the right of confidentiality at least as to the university, but decedent did not relinquish the right to control the introduction of those results into evidence at trial, and *Seaton v State Farm Life Ins Co*, 99 Mich App 587, 590-591; 299 NW2d 6 (1980), holding that a party who waives the physician-patient privilege during the first trial can reassert the privilege as to the same issue during the second trial.

Federal cases considering similar situations have reached mixed results, though the trend appears to be in favor of strictly construing the privilege as a narrow one, which "is not easily invoked and is easily destroyed." *Suburban Sew 'N Sweep, Inc v*

---

[1] We note that an early Michigan case, *People v Dunnigan*, 163 Mich 349; 128 NW 180 (1910), found a waiver of the marital privilege where a police informant, entrusted by the defendant to deliver a letter containing a potential confession to the defendant's wife, instead turned the letter over to the authorities for whom he was secretly working. *Dunnigan* appears to stand for the proposition that even inadvertent disclosures out of the party's control will end the privilege. That case, however, precedes the later Supreme Court authority upon which we rely.

*Swiss-Bernina, Inc,* 91 FRD 254, 258 (ND Ill, 1981).
This view seems to accord with those of Professor
Wigmore involving inadvertent disclosure to a
third person. See 8 Wigmore, Evidence (McNaugh-
ton rev, 1961), §§ 2325-2326, pp 632-634.

In *United States v Kelsey-Hayes Wheel Co,* 15
FRD 461, 465 (ED Mich, 1954), for example, the
government was given access to the defendant's
voluminous files, from which it copied approxi-
mately one thousand documents. Of these, defen-
dant later claimed twenty-nine were confidential
under the attorney-client privilege. The court re-
jected defendant's argument that the documents
were inadvertently handed over, finding it difficult
to believe that the documents were ever intended
to remain confidential given that they were "indis-
criminately mingled with the other routine docu-
ments of the corporation and that no special effort
to preserve them in segregated files with special
protections was made." The court held that "the
risk of insufficient precautions must rest with the
party claiming the privilege." Accord, *In re Grand
Jury Investigation of Ocean Transportation,* 196
US App DC 8; 604 F2d 672 (1979) (potentially
privileged documents mistakenly produced by orig-
inal counsel pursuant to a subpoena); *In re Horo-
witz,* 482 F2d 72 (CA 2, 1973) (accountant had
unrestricted access to client's files; client should
have taken some affirmative action to preserve
confidentiality). See also the authorities cited in
*Suburban Sew 'N Sweep, supra* at 257-259, though
that case recognizes that situations exist in which
the privilege will survive inadvertent disclosure.

On the other hand, a party was permitted to
assert the attorney-client privilege as to docu-
ments inadvertently released to the other side in
an earlier, unrelated case. *Transamerica Computer
Co, Inc v International Business Machines Corp,*

573 F2d 646 (CA 9, 1978). The disclosure occurred during an accelerated discovery process involving some seventeen million pages of documents, involving what the court termed a "Herculean" effort. Under such circumstances, the court viewed the disclosure as effectively compelled rather than inadvertent, and such could not support a waiver.

These federal cases do not discuss the dual nature of the privilege recognized in *Palen*, however, which nature leads us to find no implied waiver under the facts of this case. We distinguish this situation, involving mere inadvertence, from a situation involving an error of judgment where the person knows the information is being released but concludes that the privilege will survive for whatever misguided reason. Such an error of judgment will destroy the privilege.

We believe the attorney-client privilege to be sufficiently important to protect in this case by finding no waiver. As McCormick notes regarding privileges:

> They do not in any wise aid the ascertainment of truth, but rather they shut out the light. Their sole warrant is the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice. [McCormick, Evidence (2d ed), § 72, p 152.]

Noting the fact that numerous authors have viewed privileges as hindrances and advocated narrowing them, McCormick adds:

> The privileges have survived largely unaffected by these winnowings of the law by eminent scholars and jurists who saw them as suppressing the truth, for it is evident that for many people,

judges, lawyers and laymen, the protection of confidential communications from enforced disclosure has been thought to represent rights of privacy and security too important to relinquish to the convenience of litigants. Growing concern in recent times with the increase in official prying and snooping into the lives of private individuals has reinforced support for the traditional privileges and no doubt aided in the creation of new ones. [McCormick, Evidence (2d ed), § 77, p 157.]

We believe these views comport with the Supreme Court's view of the dual nature of the privilege in *Palen* and our belief that *Kelly* requires that an implied waiver be judged by standards as stringent as for a "true waiver." We do not believe the trial court erred in its ruling.

Affirmed.