**Elizabeth BANNER, Plaintiff,**

v.

**CITY OF FLINT and Carl Hamilton, Defendant.**

No. 99–74600.

United States District Court, E.D. Michigan, Southern Division.

Dec. 18, 2000.

E. Michael Morris, Morris & Doherty, Birmingham, MI, Glen N. Lenhoff, Michael E. Freifeld, Glen N. Lenhoff Assoc., Flint, MI, for Elizabeth Banner, plaintiffs.

Brian A. Kreucher, Keller, Thoma, Detroit, MI, Edward L. Parker, Karen E. McDonald, Flint City Attorney's Office, Flint, for Flint, MI, City of, Carl Hamilton, defendants.

### OPINION AND ORDER SETTING ASIDE IN PART THE AUGUST 3, 2000 ORDER OF MAGISTRATE JUDGE THOMAS A. CARLSON

ROBERTS, District Judge.

#### A.

This reverse discrimination case is before the Court on Defendants' and Intervenor Vickie Rose's ("Rose") Objections to the Magistrate Judge's August 3, 2000 Recommended Order [1] on Defendant's Motion for Protective Order to Strike Intervenor Vickie Rose's Deposition Testimony and to Disqualify the Law Office of Glen N. Lenhoff.

As is apparent from the title of the Objections, this instant dispute arose out of the March 7, 2000 deposition of Rose. That deposition was noticed by Plaintiff's counsel Michael Freifeld of the Lenhoff law firm. Defendants and Rose contend that, in taking her deposition, attorney Michael Freifeld and his law firm committed ethical violations.

Based on the papers submitted and the evidentiary hearing held on November 3, 2000, the Court agrees.

#### B.

Rose is the Employee Health Clinic Coordinator for Flint. She met with Freifeld on what he recalls to be February 4, 2000. The purpose of meeting was for Freifeld to determine whether Rose had a viable lawsuit arising out of her employment with the City of Flint. Toward that end, Rose shared information with Freifeld regarding her then supervisor, Tony Morolla. Rose informed Freifeld that Morolla told her that he would not follow up on white employees' discrimination complaints. Morolla's alleged reason was that the Flint mayor did not want Morolla to upset black employees before an election. Both of these pieces of information are relevant to Banner's lawsuit against Defendants for reverse discrimination.

After hearing her employment complaints, Freifeld told Rose that she did not have an actionable claim. She recalls that

---

1. The Order at issue was not actually "recommended." The matter referred to Magistrate Judge Carlson was one that he was empowered to decide; he was not limited to making a recommendation to this Court. Fed. R.Civ.P. 72(a).

he told her that she should contact him if anything new occurred, holding out the possibility of future representation. Freifeld, however, does not recall indicating that he might represent Rose in the future.

Both Freifeld and Rose agree that, at some point during their discussion, he asked her if she knew Banner and if she knew that Banner had filed a lawsuit against the City. Rose did know Banner, because Banner had filed a stress claim with Rose, who receives such claims in her capacity as the Employee Health Clinic Coordinator for Flint. The Freifeld/Rose discussion then turned to whether Rose would divulge the information she had shared regarding Morolla in the Banner lawsuit and in other reverse discrimination lawsuits filed by the Lenhoff firm against Flint.

Rose and Freifeld both testified that he asked Rose to sign an affidavit and that Rose indicated she would like to think about it. However, they differ on whether they discussed Rose disclosing the information in a deposition. Freifeld testified that Rose agreed to the deposition, stating that it would look more involuntary than if she signed an affidavit. Rose denies that she ever agreed to the deposition. She testified that she left Freifeld's office with only an agreement for her to consider signing an affidavit.

Subsequently, Rose was notified by the City of Flint legal staff that her deposition had been noticed in the *Banner* lawsuit. Rose appeared for the March 7, 2000 deposition without notifying Flint's attorneys about her consultation with Freifeld. However, the attorney for the City of Flint did ask Rose during her deposition whether she had met with counsel from the Lenhoff office, presumably because of the precise nature of the questioning during the deposition, Freifeld's questions mirrored the discussion Rose had had with him during their consultation. Following the deposition, the Flint attorney did not get any other information from Rose concerning her consultation with Freifeld.

Rose's deposition was noticed again, by another attorney with a reverse discrimination case against the City of Flint, for May 12, 2000. Flint was represented by yet another attorney. In a discussion off record, Rose finally told Flint counsel that she had consulted with the Lenhoff firm. Thereafter, Flint counsel interjected numerous objections at the May 12th deposition. However, none of them was based on attorney-client privilege.

Thereafter, on June 27, 2000, Defendants and Rose filed their Motion for Protective Order to Strike Ms. Rose's Deposition Testimony and to Disqualify the Law Office of Glen N. Lenhoff. They argued that Freifeld had violated Rose's attorney-client privilege and that she did not waive her privilege by answering Freifeld's deposition questions. Defendants and Rose requested that the Court suppress Rose's testimony, prevent that testimony from being disclosed to anyone or used in any legal or administrative proceedings, and bar Plaintiff's attorney or other counsel from inquiring into areas in which Rose asserts her attorney-client privilege at any other depositions, court or administrative proceedings.

Defendants and Rose additionally requested that the Court enter a protective order forbidding Freifeld from contacting Flint's managerial employees. The primary managerial staff member with which Freifeld was alleged to have had improper communications was Gary Lee, one of Banner's former supervisors.

In opposition to the Motion, Plaintiff asserted that Rose waived her attorney-client privilege when she showed for her deposition and answered questions without objection. Plaintiff then argued that her

attorneys should not be disqualified or sanctioned even if ethical violations occurred. Finally, Plaintiff opposed the request for a protective order and argued that her attorney's contact with Flint managerial staff was not improper.

Following oral argument, Magistrate Judge Thomas A. Carlson granted Defendants and Rose's request for a protective order, but denied their motion to strike or suppress Rose's deposition testimony and to disqualify Plaintiff's law firm. As for his decision to allow Rose's deposition to be used in this litigation, Magistrate Judge Carlson reasoned,

> [E]ven if Ms. Rose subjectively believed her initial communications to attorney Freifeld were to be confidential, her subsequent voluntary appearance at a deposition, knowing that the deposition would be disclosed and used in this case, with no objection to the inquiries at or before the deposition, either to Mr. Freifeld or Defendant City's counsel, and with no attempt to seek other legal advice, constituted a voluntary waiver of any attorney-client privilege or other claim for confidentiality as to what she initially told Mr. Freifeld, and, further, that there is therefore no basis for disqualifying Plaintiff's counsel.

(Magistrate Judge Carlson's August 3, 2000 Order).

Since Magistrate Judge Carlson granted Defendants' request for a protective order pertaining to Flint's managerial staff, their Objections address only the denial of their request to have Rose's deposition testimony stricken and to have Plaintiff's attorneys disqualified.

## C.

Fed.R.Civ.P. 72(a) authorizes this Court to set aside Magistrate Judge Carlson's Order if it is found to be "clearly erroneous or contrary to law." In this case, the Court finds that that portion of the Order denying Defendants' and Rose's request to strike her deposition, was clearly erroneous and therefore, will set it aside.

Magistrate Judge Carlson's reliance upon the general rule—that failing to object prior to the disclosure of privileged communication acts as a waiver to that privilege—was misplaced. None of the cases cited by Plaintiff regarding waiver of the attorney-client privilege addressed the nuance of this case: *that the deposition examiner seeking to disclose the confidential information is the examinee's own attorney.*[2]

That distinguishable nuance is significant because Freifeld's actions, as alleged by Rose, constituted an ethical violation. It has been recognized that "an attorney who cross-examines former clients inherently encounters divided loyalties." *U.S. v. Moscony,* 927 F.2d 742, 750 (3rd Cir. 1991). *Also see Pyle v. Meritor Savings Bank,* 1994 WL 156707 (E.D.Pa.1994). Consequently, rules of professional conduct forbid such cross-examination without the client's clear consent.

Attorneys practicing in this Court are bound by the Michigan Rules of Professional Conduct (MRPC). E.D. Mich. Lr 83.20(j). MRPC 1 .6 provides:

> (a) 'Confidence' refers to information protected by the client-lawyer privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has

---

**2.** Plaintiff cited *Fullerton v. Prudential Ins. Co.,* 194 F.R.D. 100 (S.D.N.Y.2000); *Alexander v. F.B.I.,* 186 F.R.D. 21, 46 (D.D.C.1998); *Franzel v. Kerr Mfg. Co.,* 234 Mich.App. 600, 600 N.W.2d 66 (1999); *Sterling v. Keidan,* 162 Mich.App. 88, 412 N.W.2d 255 (1987); *Steen v. First Nat. Bank,* 298 F. 36 (C.C.A.8 1924); and *Hurley v. McMillan,* 268 S.W.2d 229 (Tex.Civ.App.1954).

requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(b) Except when permitted under paragraph (c), a lawyer shall not knowingly:

(1) reveal a confidence or secret of a client;

(2) use a confidence or secret of a client to the disadvantage of the client; or

(3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.

(c) A lawyer may reveal:

(1) confidences or secrets with the consent of the client or clients affected, but only after full disclosure to them;

(2) confidences or secrets when permitted or required by these rules, or when required by law or by court order;

(3) confidences and secrets to the extent reasonably necessary to rectify the consequences of a client's illegal or fraudulent act in the furtherance of which the lawyer's services have been used;

(4) the intention of a client to commit a crime and the information necessary to prevent the crime; and

(5) confidences or secrets necessary to establish or collect a fee, or to defend the lawyer or the lawyer's employees or associates against an accusation of wrongful conduct.

(d) A lawyer shall exercise reasonable care to prevent employees, associates, and others whose services are utilized by the lawyer from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by paragraph (c) through an employee.[3]

■ In this case, Freifeld obtained "confidences" as defined by MRCP 1.6(a); he was, therefore, precluded by the attorney-client relationship from divulging the information Rose disclosed to him, unless she gave her consent after full disclosure.

■ The essential elements of the attorney-client privilege, outlined as follows, were present.

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Fausek v. White*, 965 F.2d 126, 129 (6th Cir.1992). Freifeld's obligations under the attorney-client privilege were undiminished by the fact that Rose had only a preliminary consultation and never formally retained him. *Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600, 603 (Fed. Cir.1984).

■ Freifeld also obtained "secrets" from Rose, i.e., information that Rose re-

---

**3.** Defendants and Rose cite MRPC 1.9, but the Court does not believe that that Rule is applicable. Rule 1.9 precludes a lawyer who has formerly represented a client from representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the lawyer's former client unless the former client consents. That Rule pertains to situations in which the attorney is representing someone in an action against the former client. *See, e.g., In re Osborne,* 459 Mich. 360, 589 N.W.2d 763 (1999). In this case, Banner's action is not filed against Rose and the matter Rose consulted with Freifeld about— Rose's own employment related complaints— is not the same or a substantially related matter as Banner's claims of reverse discrimination. As a consequence, MRPC 1.6 is more applicable.

quested be held inviolate and, more clearly, information that had a high potential to cause embarrassment and be detrimental to Rose in her employment environment if disclosed. If Rose's allegations are credited, Freifeld violated MRPC 1.6(b)(3) by using Rose's confidential information and secrets to the advantage of Banner, as well as for his and/or his firm's monetary gain which would result from a recovery in the Banner matter.

That Freifeld would have violated MRPC 1.6 if he did not have Rose's consent, after full disclosure, to take her deposition and question her regarding Morolla's comments, is not in dispute. Freifeld admitted as much during the hearing. (Tr, 97).

Consequently, the Court finds that Magistrate Judge Carlson's Order was clearly erroneous. He failed to address Freifeld's possible ethical violations, focusing only on the question of whether Rose's failure to object at her deposition acted as a waiver to her attorney-client privilege.

While the attorney-client privilege can be waived by the person holding it, Plaintiff has cited no authority to suggest that a client, uninformed by her attorney concerning the availability of the privilege, can "knowingly" waive her privilege, particularly when the attorney questioning her is the attorney who had the obligation to inform her of the availability of the privilege. Nor has Freifeld cited any authority that would allow him to waive his client's privilege in the context of questioning her, when he has not clearly explained to her what the attorney-client privilege means, and when it can be asserted. Freifeld acknowledged to the Court at the November 3rd hearing that he never explained to Rose, the extent of the attorney-

client privilege (Tr. 98). And, Rose testified that she did not know she had a privilege to waive at the deposition (Tr. 21).

■ Regardless of the wishes of the parties litigating the Banner case, this Court has an independent interest and the inherent authority to enforce the rules of professional conduct. *Zachair, Ltd. v. Driggs,* 965 F.Supp. 741, 749 (D.Md.1997)("Federal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court."). *Also see Morin v. Trupin,* 728 F.Supp. 952, 957 (S.D.N.Y.1989).[4] Hence, Magistrate Judge Carlson erred in ignoring Freifeld's possibly unethical conduct and narrowly focusing on Rose's failure to object at her deposition.

### D.

To determine whether Freifeld violated MRPC 1.6, the Court found it necessary to weigh the credibility of Freifeld and Rose at the hearing held on November 3, 2000, at which both Rose and Freifeld testified.

■ When making credibility determinations, a trial court must evaluate the demeanor of the witnesses as well as the internal consistency and plausibility of their testimony. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). After observing the demeanor of Rose and Freifeld, and considering the consistency and plausibility of their testimony, the Court finds Rose's testimony to be more credible.

■ At the outset, the Court will address Plaintiff's primary credibility argument. During the cross-examination of

---

4. Plaintiff has argued that the dispute arising out of Rose's deposition is moot due to the settlement between the parties. However, notwithstanding that settlement, the Court's independent interest and authority to enforce the rules of professional conduct with respect to matters before the Court deem the dispute not moot.

Rose, she was asked to clarify her testimony: Was she stating that the conversation Freifeld alleges took place at their first meeting regarding her deposition did not occur, or was she stating that she did not recall it? With a confused look on her face, Rose replied that she did not recall discussing a deposition. Plaintiff argues that, since Freifeld testified that he had a definite memory of Rose agreeing to the deposition, his testimony to that effect should be conclusive. The Court disagrees. On its face, it is highly implausible that Rose agreed to submit to a deposition but then forget about it. Such a decision would not be easily forgettable as a result of the possible consequences to Rose in her employment.

Further, viewing Rose's demeanor at the time of the line of questioning at issue, she appeared to be confused about the distinction Plaintiff's attorney was attempting to make. It appears to this Court that when Rose stated that she did not recall any discussion regarding a deposition that she meant that no such discussion occurred. This interpretation is bolstered by Rose's unambiguous testimony during her direct examination that Freifeld never even asked her to testify in a deposition.

Other testimony given by Rose, which the Court credits, is completely inconsistent with Freifeld's contention that Rose agreed to submit to a deposition. Rose testified that, when Freifeld asked her to sign an affidavit, she replied that she would have to give it serious consideration because she was already having employment related problems. Freifeld responded by telling Rose that if she was not part of the solution she was part of the problem. He told her that she need not fear retaliation. However, in light of her existing employment problems, Rose felt that her supervisors would not hesitate to retaliate. She testified that she and Freifeld

ended their meeting with her indicating that she would have to think about signing an affidavit. Subsequently, Rose decided against signing an affidavit, although she did not talk to Freifeld again.

Then, Rose was notified that Plaintiff's counsel had noticed up her deposition. Rose testified that her decision to submit to the deposition was not voluntary but was a requirement of her job. She also believed that Freifeld's questions would be confined to the circumstances surrounding Banner's filing of her stress claim. Rose continued to believe that Freifeld would keep confidential the information she had divulged to him during their consultation and was, therefore, shocked when the questioning began to mirror her discussion with Freifeld.

Rose's testimony, as summarized above, defies Freifeld's claim that Rose agreed to participate in the deposition. Her credible testimony indicates that Rose walked out of his office with the question of whether to sign an affidavit on her mind. Since Rose's focus was on whether she should sign the affidavit, it is implausible that she had already agreed to submit to a deposition but then forgot about it. Even when she received the deposition notice, Rose did not know that Freifeld would question her with respect to the information she had divulged to him in confidence.

Adding to the Court's disbelief of Freifeld's testimony is his failure to produce any notes regarding his meeting with Rose in response to this Court's October 12, 2000 Order to provide such records for an in-camera inspection. Freifeld testified that he could not find any notes upon a search of his office and, even more implausibly, that he did not recall whether or not he took notes.

The Court finds this assertion unbelievable for several reasons. First, it must be remembered that Rose was consulting

with Freifeld to see whether she had a viable lawsuit. The Court speaks from experience when stating that a lawyer interviewing a potential client remains cognizant of the potential liability that can arise from even such an initial consultation. Accordingly, the Court finds suspect Freifeld's testimony that neither he nor his office had any recorded notation of his meeting with Rose whatsoever. Compounding this Court's suspicion is Freifeld's testimony that he was able to recall, strictly from memory, that February 4, 2000 was the date he met with Rose. The Court finds it more likely that Freifeld was able to identify that date on his affidavit after reviewing a note or record of her visit.[5]

Moreover, in response to this Court's inquiry, Rose testified that Freifeld took notes during their meeting, which she said lasted about two hours.[6] Freifeld agreed that the meeting may have been about two hours, although it may have been a little shorter. Given that time period and Freifeld's obvious reasons for having a keen interest in the content of Rose's disclosures, the Court finds it implausible that Freifeld would not take notes or would forget having taken them.[7]

It is furthermore inconceivable that Freifeld would have been able to ask some of the specific questions posed to Rose during her deposition without having taken notes of their earlier meeting. For example, Freifeld asked, "Miss Rose, in March

of 1999 did Mr. Morola [sic] give you a directive, an order to not piss off any black people until after the election." (Rose dep. at 17). Additionally, it was clear that Freifeld recalled Rose's claim that Morolla told her brother that she was a bitch and even that her brother's name is Greg Duckworth (Rose dep. at 21–23).

Even more troublesome was Freifeld's testimony that he often interviews witnesses to determine whether he will represent them, only to decide not to represent them, but to use them, and the information they disclose, as evidence in other cases. Freifeld testified that he never gets written waivers from these individuals and he did not see the implication of MRPC 1.6 in engaging in such a practice.

Also, although never submitted in papers filed with the Court, or asserted to the Magistrate, Freifeld testified at the hearing that Rose waived the privilege in his office by agreeing *to give* a deposition. Having done that, Freifeld testified that Rose could never revoke the waiver.

> Once—in my opinion once it's waived, it's waived. It cannot be restored. (Tr. 99).

Previously, Freifeld had contended that Rose waived the privilege by failing to object at the deposition. That Freifeld now contends that it would have been fruitless for Rose to assert the privilege *at* the deposition, because she had irrevocably waived it in his office in February,

5. Freifeld first supplied that date on his affidavit, which was submitted before he knew that the Court would request his notes.

6. Significantly, when Rose testified that Freifeld took notes, the relevance of the notes was probably not apparent to her. Freifeld was supposed to produce his notes to the Court for *in camera* review. As a consequence, there is no indication that Rose knew that Freifeld failed to produce any notes.

7. When the Court inquired whether Freifeld would not need to have notes in order to draft the affidavit of Rose that he requested, he replied that his usual custom is to have his witness sit beside him as he drafts that witness' affidavit on the computer. However, he also testified that some witnesses prefer to have their depositions taken. Under those circumstances, it is difficult to believe that any lawyer fail to takes notes during his or her interview of the witness in order to be prepared for the deposition.

stretches Mr. Freifeld's credibility beyond all bounds.

In summary, the Court finds that Rose's testimony was more credible than Freifeld's. She credibly testified that she was leery about divulging the information she had communicated to Freifeld because she feared retaliation. Also credible was her testimony that she believed that her disclosures to Freifeld would remain confidential unless she agreed to sign an affidavit and that she and Freifeld had not even discussed her submitting to a deposition. In contrast, Freifeld's demeanor, implausible testimony regarding his note-taking lead, and opinion concerning the irrevocable nature of an uninformed waiver of the attorney-client privilege, the Court to find his testimony incredible.

### E.

In finding Freifeld's testimony to be incredible, the Court also relies upon other evidence that he has shown a disregard for the rules of professional conduct in this litigation. In particular, he has violated MRPC 4.2, which provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

In comment, MRPC 4.2 also specifies:

> In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization....

■ Freifeld has violated MRPC 4.2 by communicating with Gary Lee, one of Plaintiff's supervisors whom Banner alleged had engaged in discriminatory conduct toward her. Freifeld claimed at the hearing that Lee contacted him first, but that is irrelevant. *See Papanicolaou v. Chase Manhattan Bank, N.A.,* 720 F.Supp. 1080, 1083 (S.D.N.Y.1989)(Where the plaintiff initiated the contact with defendant's counsel that was found to be in violation of MRPC 4.2). He further admitted that he continued to communicate with Lee even after learning that he was a manager for Flint.[8] Freifeld's contention that he told Lee that he did not have to speak to Freifeld is unavailing. It was Flint, a party in this case, that stood to be damaged by Freifeld's violative communication with one of its managers. Freifeld did not seek or receive consent from Flint to speak to Lee in the absence of its attorneys.

Freifeld also spoke with Flint manager Linda Moore. At the hearing, he testified that he asked her whether she had the authority to hire or fire and, after she responded in the negative, proceeded his communication with her. Freifeld's inquiry into Moore's authority was inadequate. The test is not whether the manager has the authority to hire or fire. Rather, the comment to the rule refers to those who are managers, those whose actions may be imputed to the organization for purposes of liability or those whose statement may constitute an admission on the part of the organization. Indeed, "even lower grade employees can bind the employer if the employee is used for a certain function and

---

8. Moreover, since Banner alleged that Lee acted discriminatory toward her, the Court finds suspicious Freifeld's claim that he did not even know who Lee was when they first spoke.

the employee admits to matters concerning that function." *McCallum v. CSX Transp., Inc.,* 149 F.R.D. 104, 111 (M.D.N.C.1993).

Since Moore did not have any direct involvement in the events that led to this action and likely was incapable of making statement that would bind Flint, Freifeld communication with her did not necessarily violate MRPC 4.2. Notwithstanding, Freifeld's method of determining whether his speaking to Moore was unethical did not comport with MRPC 4.2 and displays a reckless attitude toward the rules of professional conduct.[9]

Equally revealing of Freifeld's attitude was Rose's credible testimony that he told her that she would be part of the problem in Flint if she was not part of the solution. In other words, for the benefit of the Banner case, Freifeld pressured Rose to expose the information she had conveyed to him in her effort to receive legal advice. Furthermore, Freifeld testified that, although he does not admit that Rose raised concerns about retaliation, he would not have been concerned about encouraging her to testify even if she had. He said that he would simply tell her about the laws against retaliation. Nevertheless, MRPC 1.6 forbids an attorney from disclosing secrets that would embarrass or be detrimental to the client for the benefit of another party. Although laws may prohibit some forms of retaliation, that does not mean that such retaliation would not occur or that she would not otherwise suffer some embarrassment or detriment. Both Rose's and Freifeld's testimony reveal that he harbored an utter lack of concern for whether Rose's confidential disclosures would embarrass or be detrimental to her once publically disclosed. Freifeld's effort to pressure Rose to publicly disclose her confidential communication for the benefit of the Banner case violates the spirit, if not the letter, of MRPC 1.6.

### F.

As a result of this Court's finding that Freifeld did not have consent to depose Rose about the disclosures she had made to him regarding Morolla, the Court concludes that Freifeld violated MRPC 1.6. As a result, the Court will impose remedies and sanctions as follows.

■ Under these circumstances, the striking of Rose's deposition from the record is appropriate. The suppression of tainted evidence is within the court's supervisory authority to apply rules of professional conduct. *Morin, supra.,* at 957. Thus, in *Upjohn Co. v. Aetna Cas. and Sur. Co.,* 768 F.Supp. 1186, 1212 (W.D.Mich.1990), the court upheld the magistrate judge's decision to deem inadmissible any information that was unethically obtained. Likewise, in *Massa v. Eaton Corp.,* 109 F.R.D. 312, 315 (W.D.Mich. 1985), the court ordered that evidence obtained through unethical *ex parte* communications with managerial level employees of the defendant would be inadmissible at trial. Accordingly, the Court will grant Defendants and Rose's request to strike her deposition from the record.

9. During the hearing before Magistrate Judge Carlson, Freifeld's boss, Glen Lenhoff, offered an even more limited definition of which corporate employees fall within 4.2. He argued that only managers that makes the employment decisions at issue in a case fall within the 4.2 proscription. Consequently, he stated that even a president or CEO of an organization who did not make the offending decision at issue could be contacted by opposing counsel without the presence of the organization's attorney (8/3/00 Tr. at 36–37). Since such a president or CEO would have the power to hire or fire, Lenhoff's view of an off-limits manager is even more limited than Freifeld's. Like his associate, Lenhoff exhibits a neglect of his obligations under the rules of professional conduct.

■ Further, to prevent further harm to Rose and to prevent Plaintiff's counsel and others from further benefitting from Freifeld's ethical violation, the Court will enjoin Plaintiff's attorney from distributing the deposition to anyone else; from disclosing the contents of the deposition to anyone else; and, from deposing Rose on any matters that were the subject of her March 7, 2000 deposition. Finally, the Court will enjoin the use of the Rose's deposition in any other legal or administrative proceedings by any attorney.

■ The court's supervisory authority also authorizes it to discipline Freifeld for his ethical violation. *Zachair, supra.* at 749.[10] As a result of Plaintiff's counsel's flagrant disregard of their ethical obligations, the Court will impose a monetary sanction of $5,000, on Freifeld and his law firm, payable to the Clerk of the Court immediately

Additionally, the Court orders Freifeld and the law office of Glenn Lenhoff to pay Brian Kreucher and his law firm, $15,000 in fees and costs, which is only a portion of the amount incurred by the City of Flint in litigating this matter regarding Vicki Rose.

Further, Freifeld and his firm are ordered to pay H. William Reising the sum of $5,000 for his representation of Vicki Rose.

Finally, pursuant to E.D. Mich. Lr. 83.22(c)[11], the Court will refer Plaintiff's counsel to the Michigan Attorney Grievance Commission for an investigation.

## G.

■ Before concluding this Opinion, the Court feels compelled to address two other arguments offered by Plaintiff. First, Plaintiff repeatedly emphasized at the hearing that Flint did not act quickly or aggressively enough to bring the allegations against Freifeld to the attention of the Court. Lost in this argument is any appreciation that it was Freifeld who was Rose's attorney when the communication was made, and that it was he who had the obligation to assure that Rose's confidential communication to him did not come to light without her consent. Any delay in addressing this matter by Flint and its attorneys does not lessen the gravity of Freifeld's ethical violation.

Plaintiff's counsel also emphasizes that Freifeld and the Lenhoff firm have never been disciplined for ethical violations. In light of the conduct of Freifeld and his firm during this litigation, such discipline is likely overdue.

## H.

For the reasons stated above, **THE COURT HEREBY GRANTS IN PART AND DENIES IN PART** Defendant's and Rose's Objections to the Magistrate Judgment's August 3, 2000 Recommended Or-

---

10. One type of discipline that is often contemplated is the disqualification of the offending attorney. *See, e.g., Plant Genetic Systems, N.V. v. Ciba Seeds,* 933 F.Supp. 514, 517 (1996) (citations omitted). In *Papanicolaou, supra.* at 1083, the court emphasized that "a violation of professional ethics rules does not alone trigger disqualification, rather, a trial judge should primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act." In this case, there will be no trial because the Banner dispute has been settled. As a consequence, there is no possibility of prejudice at trial that would

justify a decision by this Court to disqualify Freifeld or the Lenhoff law firm. The Court will therefore deny Defendants and Rose's request to disqualify Plaintiff's attorneys.

11. Rule 83.22(c) states, "When misconduct or allegations of misconduct that, if substantiated, would warrant discipline of an attorney who is a member of the bar of this court ... come to the attention of a judge, whether by complaint or otherwise, the judge may refer the matter to the Michigan Attorney Grievance Commission for investigation and prosecution."

der on Defendant's Motion for Protective Order to Strike Intervenor Vickie Rose's Deposition Testimony and to Disqualify the Law Office of Glen N. Lenhoff [**document 30 and 47**]; **STRIKES** Vickie Rose's March 7, 2000 deposition; **ENJOINS** Plaintiff's counsel from distributing the deposition to anyone else; **ENJOINS** Plaintiff's counsel from disclosing the contents of the deposition to anyone else; **ENJOINS** Plaintiff's counsel from deposing or cross-examining Rose on any matters that were the subject of her March 7, 2000 deposition; **ENJOINS** the use of the Rose's deposition in any other proceedings by any attorney; **ORDERS** Freifeld and the Lenhoff firm to pay: $5,000 in sanctions to the Court; $15,000 in fees and costs to Brian Kreucher and the law firm of Keller, Thoma, Schwarze, Schwarze, Dubay & Katz, P.C.; and, $5,000 to H. William Reising and the law firm of Plunkett & Cooney. Finally, the Court *DENIES* Plaintiff's Motion for Reconsideration [**document 64**].