Saad, P.J.
 

 I. NATURE OF THE CASE
 

 Plaintiffs attached to their complaint a document (identified as the “Toth Memo”) that General Motors (GM) says is protected from use in this litigation by the attorney-client privilege and the work-product doctrine. This document was prepared by a GM in-house lawyer, Gary Toth, and renders legal advice to agents of GM regarding ongoing products liability litigation involving alleged defectively designed seat-backs in rear-end collisions.
 

 Plaintiffs say that the Toth Memo is not privileged because (1) the document is essentially factual, not legal, and (2) GM waived its privilege because it produced the Toth Memo in other litigation and the document is open to inspection in other court files. In response, GM says the Toth Memo is quintessentially legal advice and strategy regarding ongoing litigation and any disclosure of the Toth Memo in other litigation throughout the United States was either ordered or done inadvertently and, thus, GM has not waived its attorney-client or work-product privileges as a matter of Michigan law.
 

 
 *232
 
 Without addressing the mixed question of law and fact whether GM voluntarily disclosed and thus waived its actual privilege, the trial court essentially ruled that, because the Toth Memo is open to inspection in other litigation throughout the United States, it is not privileged.
 
 [1]
 
 Because we hold that the Toth Memo is clearly covered by the attorney-client and work-product privileges, and because we further hold that involuntary disclosure through inadvertence or court orders in other jurisdictions does not constitute a voluntary waiver of the privilege, we reverse the trial court’s holding to the contrary and remand to the trial court for it to determine whether GM voluntarily disclosed the Toth Memo in connection with other litigation.
 

 n. FACTS AND PROCEDURAL HISTORY
 

 A NATURE OF THE DISPUTED DOCUMENT
 

 In 1992, Gary Toth, an attorney on gm’s legal staff, prepared a slide presentation (copies of which are identified as the “Toth Memo”) regarding gm’s defense of products liability lawsuits based on the seatback
 
 [2]
 
 design in gm automobiles. Specifically, the Toth Memo discusses gm’s analysis and documentation supporting the design of “yielding” seats and the effect of such seats on potential occupant ejections and injuries in
 
 *233
 
 rear-end collisions. In the memo, Toth also outlines problems encountered by GM in litigating seatback lawsuits and suggests particular information needed to bolster gm’s position in seatback litigation.
 

 On May 11, 1997, Charles Allen Leibel sustained severe injuries in an automobile accident involving a vehicle driven by James Samuel Napier and owned by Birdie Virginia Fisher. On February 20, 1998, Leibel filed a complaint against Napier and Fisher for negligence. Thereafter, Leibel filed an amended complaint and added his wife and children as plaintiffs and GM as a defendant. Plaintiffs alleged that gm negligently designed the seats in the 1988 Pontiac 6000, which Leibel was driving at the time of the accident. Plaintiffs attached a copy of the Toth Memo to their amended complaint.
 

 B. THE DISPUTE REGARDING HOW THE TOTH MEMO BECAME “PUBLIC”
 

 The parties dispute exactly how plaintiffs’ counsel acquired the Toth Memo. Plaintiffs and GM agree that plaintiffs’ attorneys representing clients in other cases obtained the Toth Memo from a document repository at the law offices of McGuire, Woods, Battle & Booth, LLP, in Richmond, Virginia.
 
 [3]
 
 Plaintiffs further maintain that attorneys in at least three of the cases
 
 [4]
 
 reviewed the documents at McGuire, Woods and that
 
 *234
 
 a GM attorney voluntarily copied the Toth Memo, among other documents, and released it to the plaintiffs’ attorneys. In contrast, GM says that, while the GM attorneys at McGuire, Woods reviewed approximately 100,000 documents to identify and eliminate any privileged documents, the Toth Memo was nonetheless inadvertently placed in the repository in the files of gm engineer Mark Oleszko. Gm asserts that it learned that the Toth Memo was discovered and copied when a plaintiff’s attorney attempted to introduce the memo at the deposition of a GM engineer in two other cases.
 
 [5]
 
 According to GM, the attorney obtained his copy of the Toth Memo from an attorney involved in
 
 Woody v General Motors Corp,
 
 No. 96VS0115085A (Fulton Co St Ct, Ga, 1996). Gm further claims that before it could correct the error by removing the Toth Memo from the McGuire, Woods repository, two additional attorneys in other lawsuits also obtained copies of the Toth Memo.
 
 [6]
 

 Further, though it is clear that GM produced the Toth Memo in another case,
 
 Simpson v General Motors Corp,
 
 No. 17972 (Morris Co Ct, Tex), it remains unclear whether this document was produced voluntarily or involuntarily. On one hand, plaintiffs claim that GM stipulated the production of the Toth Memo in
 
 Simpson
 
 and that, pursuant to the court’s order, plaintiffs’ counsel in this case “is entitled to full access to all documents produced by General Motors.”
 
 [7]
 
 Conversely, GM asserts that it was com
 
 *235
 
 pelled to produce the Toth Memo in
 
 Simpson
 
 pursuant to court order.
 

 Here, GM filed a motion in the trial court to retrieve the Toth Memo and argued that it is protected by the attorney-client privilege and the work-product doctrine and that GM never waived those protections. The trial court ultimately entered an order denying gm’s motion and ruled that the Toth Memo is not protected by the attorney-client privilege or the work-product doctrine because it had been circulated in the “public domain.”
 
 [8]
 

 C. THE TRIAL COURT’S RULING
 

 The trial court misapprehended the law regarding the attorney-client privilege and the work-product doctrine. The trial court incorrectly stated in its bench opinion that “the policy justifications for the application of the attomey/client privilege and the work product protection do not apply to the subject documents in this case.”
 
 [9]
 
 The court also erroneously ruled that the Toth Memo is not protected by the attorney-client privilege because it is no longer confidential and because GM produced it in other courts and, specifically, in a California lawsuit,
 
 Hibbard v General
 
 Motors, after the
 
 Hibbard
 
 court ruled that the memo was not entitled to protection. Further, the trial court inaccurately stated that the Toth Memo “would not have been made in anticipation of litigation in this case.”
 
 [10]
 
 Finally, the trial court held, again
 
 *236
 
 incorrectly, that the Toth Memo is not protected by the work-product doctrine because plaintiffs demonstrated that they had substantial need of the document and that they could not acquire it through other means without undue hardship.
 

 m. ANALYSIS—ATTORNEY-CLIENT PRIVILEGE
 

 A. STANDARD OF REVIEW AND APPLICABLE LAW
 

 The question whether the attorney-client privilege applies to a communication is a question of law that this Court reviews de novo.
 
 Reed Dairy Farm v Consumers Power Co,
 
 227 Mich App 614, 618; 576 NW2d 709 (1998). This Court considered the scope of the attorney-client privilege in
 
 Reed,
 
 at 618-619:
 

 The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents. The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice. Where an attorney’s client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication. [Citations omitted.]
 

 In
 
 Co-Jo, Inc v Strand,
 
 226 Mich App 108, 112; 572 NW2d 251 (1997), our Court further explained that “[t]he purpose of the attorney-client privilege is to permit a client to confide in the client’s counselor, knowing that the communications are safe from disclosure.” Further, the United States Supreme Court explained the importance of the attorney-client privilege in the company setting in
 
 Upjohn Co v United
 
 
 *237
 

 States,
 
 449 US 383, 389; 101 S Ct 677; 66 L Ed 2d 584 (1981). The Court articulated the vital principles underlying the rule:
 

 The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J Wigmore, Evidence § 2290 (McNaughton rev 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer’s being fully informed by the client. As we stated last Term in
 
 Trammel v United States,
 
 445 US 40, 51; 100 S Ct 906; 63 L Ed 2d 186 (1980): “The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client’s reasons for seeking representation if the professional mission is to be carried out.” And in
 
 Fisher v United States,
 
 425 US 391; 96 S Ct 1569, 1577; 48 L Ed 2d 39 (1976), we recognized the purpose of the privilege to be “to encourage clients to make full disclosure to their attorneys.”
 

 Professor McCormick echoes this rationale for the privilege and also plainly explains its purpose:
 

 First the law is complex and in order for members of the society to comply with it in the management of their affairs and the settlement of their disputes they require the assistance of expert lawyers. Second, lawyers are unable to discharge this function without the fullest possible knowledge of the facts of the client’s situation. And last, the client cannot be expected to place the lawyer in full possession of the facts without the assurance that the lawyer cannot be compelled, over the client’s objection, to reveal the confidences in court. [1 McCormick, Evidence (5th ed), § 78, p 344.]
 

 
 *238
 
 B. APPLICATION OF THE ATTORNEY-CLIENT PRIVILEGE
 

 We hold that the trial court erred in ruling that the attorney-client privilege does not apply to the Toth Memo.
 

 The memorandum, drafted by Gary Toth, an attorney in gm’s legal department, contains Toth’s legal opinions and legal recommendations regarding gm’s analysis and documentation about seatback designs. Specifically, Toth assesses problems GM confronted in
 
 litigating
 
 seatback lawsuits and makes suggestions regarding the information needed to support gm’s
 
 position in seatback litigation.
 
 In his legal memorandum, Toth advises GM to obtain more information on seatback safety and recommends ways to overcome deficiencies in seatback design and performance testing. The Toth Memo further sets forth Toth’s legal advice about potential liability regarding seatback safety and how GM may protect itself against potential lawsuits.
 
 [11]
 
 Contrary to plaintiffs’ assertions, the information in the Toth Memo extends well beyond “mere business” suggestions and analysis. Indeed, Toth specifically analyzes gm’s legal position and purposefully discusses how GM should effectively demonstrate that GM exercised reasonable care regarding seatback design. Clearly, the Toth Memo represents precisely the kind of legal advice in-house counsel routinely provides to a corporate client. To hold that this kind of memorandum does not constitute legal advice protected by the attorney-client privilege would seriously undermine the privilege in the corporate setting. Accordingly, we hold that the Toth Memo contains
 
 *239
 
 legal advice, which, contrary to the trial court’s assertion, places it squarely within “the policy justifications for the application of the . . . privilege.”
 

 We also reject plaintiffs’ argument that the attorney-client privilege does not apply because the information in the Toth Memo is factual, rather than legal. First, as stated above, this memorandum so clearly constitutes traditional legal advice that attempts to characterize it as factual rather than legal border on sophistry. Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice.
 
 Hubka v Pennfield Twp,
 
 197 Mich App 117, 122; 494 NW2d 800 (1992), rev’d on other grounds 443 Mich 864 (1993). While the Toth Memo contains certain factual statements, it is clear that the overriding basis for and content of the memorandum concerns legal advice for seatback safety and potential litigation rather than mere facts or technical data concerning GM seatbacks.
 
 [12]
 

 Finally, while not dispositive, the Toth Memo is expressly marked “confidential” and “privileged” and contains a paragraph announcing the private nature
 
 *240
 
 of the communication. For all the foregoing reasons, we find that the Toth Memo was intended as a confidential, legal communication between Toth and GM agents and counsel and that, absent waiver, it is protected by the attorney-client privilege.
 

 C. WAIVER—ATTORNEY-CLIENT PRIVILEGE
 

 The question of what constitutes a waiver of the attorney-client privilege is a question of law that we decide de novo.
 
 [13]
 
 The attorney-client privilege is personal to the client, and only the client can waive it.
 
 Ravary v Reed,
 
 163 Mich App 447, 453; 415 NW2d 240 (1987), quoting
 
 Passmore v Passmore’s Estate,
 
 50 Mich 626, 627; 16 NW 170 (1883). Moreover, a waiver of the privilege does not arise by accident.
 
 Sterling v Keidan,
 
 162 Mich App 88, 95-96, 99; 412 NW2d 255 (1987). This Court cogently set forth these principles articulated by the
 
 Sterling
 
 Court in
 
 Franzel v Kerr Mfg Co,
 
 234 Mich App 600, 615-616; 600 NW2d 66 (1999):
 

 (1) The attorney-client privilege has a dual nature, i.e., it includes both the security against publication and the right to control the introduction into evidence of such information or knowledge communicated to or possessed by the attorney; (2) This dual nature of the privilege applies where there has been inadvertent disclosure of privileged material; (3) An implied waiver of the privilege must be judged by standards as stringent as for a “true waiver,” before the right to control the introduction of privileged matter into evidence will be destroyed, even though the inadvertent dis
 
 *241
 
 closure has eliminated any security against publication; (4) A “true waiver” requires “ ‘an intentional, voluntary act and cannot arise by implication,’ ” or “ ‘the voluntary relinquishment of a known right;’ ” and (5) Error of judgment where the person knows that privileged information is being released but concludes that the privilege will nevertheless survive will destroy any privilege. [Citations omitted.]
 

 As discussed above, the fact that confidential information has been published does not automatically waive the attorney-client privilege.
 
 Sterling, supra
 
 at 93. Further, as
 
 Sterling
 
 and
 
 Franzel
 
 instruct, to constitute a valid waiver, there must be an intentional, voluntary act or “true waiver.” Thus, a document inadvertently produced that is otherwise protected by the attorney-client privilege remains protected.
 
 Franzel, supra
 
 at 618. No Michigan case supports the proposition that a document loses its privileged status when it is obtained by one of the parties from an independent source.
 
 [14]
 
 Absent a true waiver, therefore, a document retains its privileged status, regardless of whether it has been publicly disclosed. To hold otherwise would seriously erode one of the law’s most protected privileges.
 
 [15]
 

 
 *242
 
 The trial court’s assertion that the attorney-client privilege is destroyed merely because the Toth Memo now appears in a public court file is contrary to Michigan law.
 
 [16]
 
 Of course, it is true as our courts have held that “[o]nce otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears.”
 
 Oakland Co Prosecutor v Dep’t of Corrections,
 
 222 Mich App 654, 658; 564 NW2d 922 (1997). However, importantly for our analysis, our Courts have strongly “ ‘repudiated the theory that once the confidential information ha[s] been published, the privilege of objecting to its repetition ha[s] been waived . . . .’”
 
 Sterling, supra
 
 at 93, quoting
 
 Polish Roman Catholic Union of America v Palen,
 
 302 Mich 557, 562; 5 NW2d 463 (1942). While courts in a minority of jurisdictions have held that any public disclosure of otherwise privileged documents destroys the privilege because the information is no longer confidential, the courts of our state
 
 *243
 
 clearly hold otherwise.
 
 Sterling, supra.
 
 Accordingly, the trial court also plainly erred in ruling that the Toth Memo is not protected by the attorney-client privilege on the theory that “it is no longer confidential.”
 

 Were we to affirm the trial court’s reasoning, any party could render an otherwise privileged document nonprivileged, regardless of whether the party obtained it by inadvertent, fraudulent, or bad-faith disclosure, merely by placing the document in the public record. This runs contrary to the clear edicts of our state courts. The attorney-client privilege is not, nor should it be, so easily compromised. The attorney-client privilege protects a communication intended to be confidential, regardless of whether that confidentiality has been unknowingly compromised. Though inadvertent or involuntary disclosure “has eliminated any security against publication,” whether the attorney-client privilege has been destroyed by this disclosure depends on whether the privilege has been waived.
 
 Franzel, supra
 
 at 616, citing
 
 Sterling, supra
 
 at 95-96.
 

 Because the trial court erroneously ruled that the attorney-client privilege does not apply to the Toth Memo, it failed to resolve whether GM executed a “true waiver” of that privilege. Accordingly, the trial court’s exercise of discretion in deeming the Toth Memo nonprivileged was based on an erroneous interpretation and application of the law. As discussed above, the parties vehemently disagree whether gm intentionally and voluntarily disclosed the Toth Memo or if the disclosure was inadvertent or involuntarily compelled and, therefore, not a “true waiver” of the attorney-client privilege. Accordingly,
 
 *244
 
 we remand this case for the trial court to make the determination whether gm voluntarily or inadvertently disclosed the Toth Memo.
 

 IV. ANALYSIS—WORK-PRODUCT DOCTRINE
 

 A. STANDARD OF REVIEW AND APPLICABLE LAW
 

 Similar to our analysis of the attorney-client privilege, whether a document is protected by the work-product doctrine is a question of law that we review de novo.
 
 Koster v June’s Trucking, Inc,
 
 244 Mich App 162, 168; 625 NW2d 82 (2000);
 
 Cardinal Mooney High School v Michigan High School Athletic Ass’n,
 
 437 Mich 75, 80; 467 NW2d 21 (1991).
 

 Under the work-product doctrine, “ ‘any notes, working papers, memoranda or similar materials, prepared by an attorney in anticipation of litigation, are protected from discovery.’ ”
 
 Messenger v Ingham Co Prosecutor,
 
 232 Mich App 633, 636-637; 591 NW2d 393 (1998), quoting Black’s Law Dictionary (6th ed), p 1606. The work-product doctrine is set forth in MCR 2.302(B)(3)(a), which provides:
 

 Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party’s representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories
 
 *245
 
 of an attorney or other representative of a party concerning the litigation.
 

 B. APPLICATION OP THE WORK-PRODUCT DOCTRINE
 

 We hold that the trial court erred in ruling that the work-product doctrine does not apply to the Toth Memo.
 

 As this Court explained in
 
 Powers v City of Troy,
 
 28 Mich App 24, 37-38; 184 NW2d 340 (1970):
 

 [SJtatements, except confidential statements by a client to his attorney, are not privileged. They are, however, if obtained in anticipation of litigation or preparation for trial, work product and, therefore, cloaked with a qualified immunity without regard to whether they are prepared by an attorney or by some other person and whether such other person was engaged by an attorney.
 

 Factual work product receives less protection than work product that reveals the opinions, judgments, and thought processes of counsel.
 
 Messenger, swpra
 
 at 639. Because MCR 2.302(B)(3)(a) is virtually identical to its federal counterpart, FR Civ P 26(b)(3), it is appropriate to rely on federal cases for guidance in determining the scope of the work-product doctrine.
 
 Koster, supra
 
 at 170.
 

 We agree with gm that Toth prepared the memorandum in anticipation of litigation.
 

 “It is generally understood that litigation need not have actually been commenced, or threatened, before it may be stated that materials were prepared in anticipation of litigation. It is generally sufficient if the prospect of litigation is identifiable, either because of the facts of the situation or the fact that the claims have already arisen.”
 
 [Great Lakes Concrete Pole Corp v Eash,
 
 148 Mich App 649, 654, n 2; 385
 
 *246
 
 NW2d 296 (1986), quoting
 
 United States v Davis,
 
 636 F2d 1028 (CA 5, 1981).]
 

 Furthermore, we agree with the United States Court of Appeals, District of Columbia Circuit, that the work-product doctrine does not require that an attorney prepare the disputed document only after a specific claim has arisen.
 
 Equal Employment Opportunity Comm v Lutheran Social Services,
 
 337 US App DC 373, 382-383; 186 F3d 959 (1999). Obviously, a document may be prepared in anticipation of litigation if the attorney rendered legal advice in order to protect the client from future litigation concerning a particular transaction or issue.
 
 Id.
 

 Here, the trial court incorrectly held that the Toth Memo could not have been prepared in anticipation of litigation in this case because the communication was “acted upon and followed or rejected many times over in the course of similar litigation.”
 
 [17]
 
 Toth signed an affidavit stating that he prepared the Toth Memo to render legal advice relating to the defense of seatback lawsuits. The parties do not dispute that GM confronted numerous seatback product liability lawsuits before Toth prepared his memorandum. Further, Toth drafted the memorandum to protect GM from liability in future lawsuits concerning the same products and legal issues.
 

 Gm argues that the Toth Memo is absolutely protected by the work-product doctrine because it constitutes opinion work product. Accordingly, GM asserts that the Toth Memo is not subject to the substantial need and undue hardship exception to the doctrine applied by the trial court. Conversely, plain
 
 *247
 
 tiffs contend that the Toth Memo is factual in nature and is, therefore, wholly discoverable. MCR 2.302(B)(3)(a) states that, even when a party demonstrates substantial need and undue hardship, the court “shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories” of the attorney concerning the litigation. Further:
 

 The plain language of [MCR 2.302(B)(3)(a)] indicates that even when a party may obtain materials prepared in “anticipation of litigation” by affirmatively showing a substantial need for the materials and undue hardship in obtaining them by other means, the party may not obtain materials that merely reflect the “mental impressions, conclusions, opinions, or legal theories of an attorney.”
 
 [People v Gilmore,
 
 222 Mich App 442, 450; 564 NW2d 158 (1997).]
 

 Thus, if a party demonstrates the substantial need and undue hardship necessary to discover work product, that party may discover “only factual, not deliberative, work product.”
 
 Messenger, supra
 
 at 644.
 

 We hold that the Toth Memo is absolutely privileged under the work-product doctrine because it constitutes Toth’s opinions, conclusions, and legal advice made in anticipation of litigation for the reasons thoroughly discussed above. Toth analyzes gm’s exercise of “due care,” assesses problems in testing and prior litigation, and suggests information needed to strengthen gm’s defense. Accordingly, we hold that the trial court erred in ruling that plaintiffs could obtain discovery of the document by showing substantial need and undue hardship. This document quite demonstrably contains the thought processes and legal analysis of counsel. This is precisely the type of work product that merits maximum protec
 
 *248
 
 tion under the work-product doctrine.
 
 Hickman v Taylor,
 
 329 US 495; 67 S Ct 385; 91 L Ed 451 (1947).
 

 C. WAIVER—WORK-PRODUCT DOCTRINE
 

 Similar to the attorney-client privilege, the work-product protection can be waived.
 
 People v Tronti,
 
 176 Mich App 544, 550; 440 NW2d 62 (1989), quoting
 
 United States v Nobles,
 
 422 US 225, 239; 95 S Ct 2160; 45 L Ed 2d 141 (1975). Because the trial court erroneously ruled that the work-product doctrine does not apply to the Toth Memo, it failed to consider plaintiffs’ argument that gm’s attorneys waived that privilege. Accordingly, in addition to determining whether GM waived the attorney-client privilege, we remand for the trial court to make this similar determination regarding the work-product doctrine.
 

 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 The trial court also erroneously ruled that the Toth Memo is not protected by the attorney-client and work-product privileges because the Toth Memo was not prepared specifically for this lawsuit and because plaintiffs showed substantial need for the document. These and other erroneous trial court rulings are discussed more fully below.
 

 [2]
 

 The design issues raised in this case involve the strength, stiffness, and mechanisms inside the back portion of gm vehicle seats, referred to here, for simplicity, as “seatbacks.”
 

 [3]
 

 According to the parties, gm attorneys stored all gm corporate documents related to seat performance in a “reading room” at the offices of McGuire, Woods and allowed plaintiffs’ attorneys in numerous cases to review them.
 

 [4]
 

 Woody v General Motors Corp,
 
 No. 96VS0115085A, (Fulton Co State Ct, Ga, 1996);
 
 Wood v General Motors Corp,
 
 No. 95-198 (US Dist Ct, ND Iowa, 1995); and
 
 Dubay v General Motors Corp,
 
 No. 95-506420-NP (Oakland Cir Ct, Mich, 1995).
 

 [5]
 

 Gleason v General Motors Corp,
 
 No. 97-CI-00154 (Breathitt Co Ct, Ky, 1997);
 
 Piaz v General Motors,
 
 No. 93-10141 (Dallas Co, Tex, 1993).
 

 [6]
 

 Wood, supra,
 
 and
 
 Dubay, supra.
 

 [7]
 

 Plaintiffs’ Brief on Appeal, p 3, Exhibit 1, p 11.
 

 [8]
 

 The trial court’s use of the phrase “public domain” is inaccurate, as explained below.
 

 [9]
 

 Trial court bench opinion, p 6.
 

 [10]
 

 Id.
 

 [11]
 

 Further, Toth testified in an affidavit that the Toth Memo contains his legal advice to GM relating to its defense of seatback lawsuits.
 

 [12]
 

 There is clearly no support for the trial court’s rationale that the attorney-client privilege does not apply to the Toth Memo because Toth prepared it before plaintiffs filed this case. The privilege attaches to confidential communications “made for obtaining legal advice.”
 
 Reed, swpra
 
 at 618-619. As set forth above, Toth drafted the memorandum to provide legal advice to gm. Further, the privilege protects such communication “for the purpose of rendering legal advice in the future.”
 
 Co-Jo, supra
 
 at 112. The clear impetus for the Toth Memo was to advise GM how to approach concerns regarding gm seatbacks during future litigation. It is clear from the memorandum itself that those concerns arose during prior litigation and that identical issues would appear in imminent and eventual claims.
 

 [13]
 

 This Court grants more deference to a trial court’s decision whether the facts of a particular case demonstrate a valid waiver of the privilege and the trial court’s ultimate decision whether to grant or deny discovery.
 
 Koster v June’s Trucking, Inc,
 
 244 Mich App 162, 166; 625 NW2d 82 (2000).
 

 [14]
 

 We find
 
 Haberkorn v Chrysler Corp,
 
 210 Mich App 354; 533 NW2d 373 (1995), inapposite. Contrary to plaintiffs’ argument,
 
 Haberkom
 
 does not stand for the proposition that' the attorney-client privilege and the work-product doctrine do not apply to a document if the document has been obtained from an independent source. Rather,
 
 Haberkom
 
 merely states that work-product evidence, if obtained from an independent source, might be admissible evidence even if it is not discoverable, an issue not raised in this case.
 
 Id.
 
 at 365-366. Further, the Court in
 
 Haberkom
 
 chose not to analyze the issue in any detail because the defendant “fail[ed] to provide any authority or argument in support of its bald assertion” that if evidence is not discoverable, it is also not admissible.
 
 Id.
 
 at 366.
 

 [15]
 

 In this regard, we agree with the basic notion expressed by the Court in
 
 United States v Hurley,
 
 728 F Supp 66, 67 (D Mass, 1990):
 

 
 *242
 
 The attorney-client privilege is the most fundamental of all legal relationships and any interference with or disruption of that relationship should be exercised only under extraordinary circumstances. The privilege is the root of a just and orderly judicial process and courts must be vigilant' in sustaining it and shielding it from encroachment.
 

 [16]
 

 We disagree with the trial court’s conclusion that the Toth Memo is now “part of the
 
 public domain."
 
 Trial court order, p 2 (emphasis added). Outside the real property context, the public domain is “[t]he realm of publications, inventions, and processes that are not protected by copyright or patent,” and “the status of an invention, creative work, commercial symbol, or any other creation that is not protected by any form of intellectual property.” Black’s Law Dictionary (7th ed), p 1243, quoting 1 McCarthy,
 
 McCarthy on Trademarks and Unfair Competition
 
 (3d ed, 1996), § 1.01 [2], pp 1-3. While the Toth Memo may have been placed in a public court file, it clearly does not come within the ambit of the public domain.
 

 [17]
 

 Trial court bench opinion, p 6.