# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARIO DONTEZ WRIGHT,

Defendant-Appellant.

UNPUBLISHED
March 8, 2016

No. 323682
Wayne Circuit Court
LC No. 14-001796-FC

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Dario Dontez Wright, appeals by right his bench convictions of manslaughter, MCL 750.321, second-degree murder, MCL 750.317, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm, MCL 750.224f. The trial court acquitted Wright of two counts of first-degree murder. See MCL 750.316. The trial court sentenced Wright, as a fourth habitual offender, MCL 769.12, to serve 4 to 15 years in prison for the voluntary manslaughter conviction, 25 to 50 years in prison for the second-degree murder conviction, two years in prison for the felony-firearm conviction, and to time served for the felon in possession of a firearm conviction. Because Wright has not established any errors warranting a new trial, we affirm.

In December 2013, Gyuana Peterson lived with her grandmother and her grandmother's boyfriend, Wright. Because she was angry with her grandmother, Peterson arranged to have the home burglarized. In the morning, Peterson stole multiple guns and brought them to the home of Fallon Green and Antoine Crumby. At around noon that same day, she returned to her grandmother's home with Green. She asked Wright to help her pick out a part for her car so the house would be empty for Crumby to burglarize. Wright agreed to help her and they left. Crumby broke into the home and stole two televisions, a coat, and a duffel bag. Crumby brought the items back to his home where he met Green and Peterson.

Later that evening, Wright called Peterson and told her that he knew she was involved in the burglary. He stated that she should come to the house to kiss her grandmother goodbye because he was going to kill her. Peterson eventually returned to the home accompanied by a police officer so she could remove some personal possessions. The officer advised Peterson not to return to the home that night. Nevertheless, Peterson returned later that night with Green, Crumby, and Green's cousin Curtis Smith, in order to retrieve her furniture.

-1-

After they arrived, Wright came out of the home and asked who was involved in the burglary. Wright went back in the home and returned with a long gun and two other armed men. Wright patted down Smith, at which point Smith slapped his hand away. Immediately after this, Wright turned towards Crumby and shot him in the head. As Smith began to flee, Wright turned and shot him in the back. Wright then shot both men a second time. He was later seen driving away with Peterson's grandmother and the two other men.

Wright first argues that he did not receive the effective assistance of counsel. He maintains that his pretrial lawyer's decision to have an incriminating conversation with him while under surveillance amounted to ineffective assistance. This error, he further maintains, was exacerbated by his trial lawyer's failure to object to the admission of the recording. Finally, he contends that his trial lawyer deceived him into waiving his right to a jury trial.

This Court reviews de novo whether a defendant's lawyer's acts or omissions amounted to ineffective assistance. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Any findings of fact are reviewed for clear error. *Id*. Because the trial court did not hold a hearing on this issue, our review is limited to mistakes that are apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). "The question whether the attorney-client privilege applies to a communication is a question of law that this Court reviews de novo." *Leibel v Gen Motors Corp*, 250 Mich App 229, 236; 646 NW2d 179 (2002).

In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order for the defendant to satisfy the prejudice prong of the analysis, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Pickens*, 446 Mich at 312, quoting *Strickland*, 466 US at 695.

Wright maintains that his first lawyer, Delicia A. Cain-Taylor Coleman, seriously erred when she advised him about what statements he should make to officers while they were in an interrogation room. Coleman should have recognized that they were under surveillance and, therefore, should have avoided engaging in a privileged, incriminating conversation. An officer informed Coleman that she and Wright were being recorded before the officer left the room. Despite this, she elected to discuss with Wright how he should present his version of events, which gave rise to the inference that he was not being entirely truthful. Although a defendant must overcome the presumption that his trial counsel's performance derived from a sound trial strategy, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). There was nothing sound or strategic about the decision to engage in a potentially incriminating conversation while clearly under surveillance. Because we can conceive of no legitimate strategic reason for proceeding in that manner, we conclude that Coleman's decision fell below an objective standard of reasonableness under prevailing professional norms.

In order to prove prejudice, Wright must demonstrate a reasonable probability that, but for his trial counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 US at 694. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id*.

The trial court's findings demonstrate that the conversation between Wright and Coleman did not influence its decision. Instead, the trial court stated that it relied on the testimony of multiple eyewitnesses to the crime as well as overwhelming physical evidence. The trial court noted that the shell casings found at the scene were consistent with the long gun that Wright was carrying at the time. In addition, the trial court stated that there were no shell casings from the handguns that Crumby and Smith were carrying, thus undermining Wright's claim of self-defense. The trial court also noted how Smith was shot in the back. Nowhere in the trial court's findings did it state that it was relying at all on the conversation at issue. On this record, we conclude that Wright's lawyer's deficient performance did not prejudice his trial.

With regard to Wright's claim that his trial lawyer, Susan Reed, provided ineffective assistance by failing to object to the admission of the conversation, Wright cannot demonstrate that his lawyer's failure to object fell below an objective standard of reasonableness under prevailing professional norms. A defendant's communication with his or her lawyer is generally privileged. MCL 767.5a(2). "The privilege exists to allow a client to confide in the attorney and be safe in the knowledge that the communication will not be disclosed." *People v Compeau*, 244 Mich App 595, 597; 625 NW2d 120 (2001). However, this Court has held that where the element of confidentiality is lacking, a communication will not be privileged. *Id*. In *Compeau*, the defendant communicated with his attorney while standing just a few feet away from a bailiff. *Id*. The Court held that by communicating in a public place while clearly under the scrutiny of the bailiff, the defendant "failed to take reasonable precautions to keep his remark confidential and thus the communication was not privileged." *Id*. at 597-598.

As in *Compeau*, Wright failed to take reasonable precautions to keep his remarks to Coleman confidential. Both Coleman and Wright were aware that they were under video surveillance. Despite that knowledge, they chose to communicate about how Wright would present his version of events to the officers. The element of confidentiality necessary for attorney-client privilege was not present here. Because attorney-client privilege did not apply, Reed cannot be faulted for failing to object on that basis. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) ("Counsel is not ineffective for failing to make a futile objection.").

Wright next argues that Reed should not have advised him to waive his right to a jury trial. In support of this argument, Wright averred that, after Reed initially advised him to waive his right to a jury trial, he told her that he wanted to hear what his family thought about the decision. According to Wright, just prior to his waiver before the trial court, Reed told him that his family agreed with her decision to seek a bench trial. It was only after he waived his right to a jury that he learned that his family did not approve.

As noted, our review is limited to mistakes that appear in the record. The record shows that the trial court complied with MCR 6.402(B), and ensured that Wright's waiver was knowingly and intelligently made. The trial court asked him if he understood that right and also asked him if he was promised, forced, coerced, or otherwise made to waive his right. Wright

responded that he was not and that he was waiving his right to a jury trial as a result of his own free will. The trial court accepted his waiver and specifically found that it was made "knowingly, voluntarily, understandingly, and intelligently." Although Wright included an unsigned affidavit in his motion for a new trial claiming that Reed deceived him into waiving his right, he did not include any offers of proof that demonstrated that other witnesses with personal knowledge could support this claim. Therefore, on this record, Wright has not demonstrated that his lawyer provided ineffective assistance with regard to his decision to waive his right to a jury trial. *Pickens*, 446 Mich at 338.

Wright has not established any error warranting a new trial.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro