*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF WAYNE,

    Plaintiff/Counterdefendant-Appellant,

v

ANTHONY WAYNE MILLER,

    Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
September 12, 2025
10:41 AM

No. 370813
Wayne Circuit Court
LC No. 22-001565-CZ

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

In this breach-of-fiduciary-duty action, the City of Wayne appeals the trial court's post-judgment order imposing sanctions after concluding it frivolously sued a former councilman, defendant Anthony Wayne Miller. Because we conclude the trial court's frivolousness determination was erroneous, we vacate that order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Miller served as a City councilman from 2016 until 2021. In mid-2018, the City hired outside legal counsel to investigate claims regarding the City's work environment. This investigation culminated in multiple reports detailing the outside legal counsel's findings and recommendations—an August 8, 2018 report (the "Initial Report") and an August 18, 2018 supplement (the "Supplemental Report") (collectively, the "Workplace Reports"). Both documents expressly indicate that their contents were "privileged and confidential attorney work product." The parties' descriptions of the Workplace Reports differ: they are "inflammatory" in the City's view, while Miller contends they expose "rampant workplace harassment and discrimination."

Initially, City council members only received copies of the Initial Report, which they discussed privately during a closed session of a council meeting on Tuesday, August 14, 2018. They received the Supplemental Report a few days later. At a City council meeting on September 4, 2018, a majority of the council approved removing the privileged and confidential status of at least the Initial Report and releasing it to the public. The record is unclear, however, whether this approval extended to the Supplemental Report.

The day after the public meeting, the City released an unredacted, consolidated copy of the Workplace Reports on its website. Although it was removed within approximately 15 minutes, at least one member of the public downloaded it in the interim. She then printed, scanned, and distributed it to at least one other person. Several days later, the City attorney sent the council an e-mail explaining that, after reviewing the Workplace Reports and the City's harassment policy, he recommended that the City only release copies of "the report" in response to specific Freedom of Information Act requests, with such copies being redacted as appropriate in each instance. This recommendation sought to balance the public's interest in the results of the investigation with the City's obligation to maintain the confidentiality and privacy of the employees who participated in it.

At another public council meeting in early 2019, Miller requested that the council put the "report . . . back on the agenda for discussion." Although Miller was clearly referencing the Workplace Reports, generally, he did not specify whether his request included the Initial Report, the Supplemental Report, or both. A revised City Employee Handbook (the "Employee Handbook") took effect a few months later, which included a confidentiality provision that "strictly prohibited" City council members "from disclosing information or documents obtained through the course of their tenure as a council member or employment with the City to unauthorized persons . . . ." Later in 2019, Miller voluntarily participated in an interview with the Michigan State Police and gave them a copy of the Workplace Reports. By that time, he had already sent copies to various other governmental agencies and officials.

The City initiated this lawsuit in February 2022, alleging Miller breached his fiduciary duties to it by distributing unredacted copies of the Workplace Reports to various state agencies and referencing their contents elsewhere. Miller filed counterclaims against the City, alleging sex discrimination, a hostile work environment, and retaliation, each in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*. The trial court entered summary disposition on those claims in the City's favor, but this Court granted to leave to appeal and then ultimately reversed and remanded for further proceedings. See *City of Wayne v Miller*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364138); slip op at 10-11. However, his counterclaims are not directly relevant to the resolution of this appeal.

At the same time, the City was also defending a lawsuit in a federal district court. As pertinent here, the federal complaint referenced specific findings made within the Workplace Reports. And in response to the City's motion to strike these references, the district court concluded that the Workplace Reports were not protected by attorney-client privilege because the "City Council expressly waived any privileges that protected the [Initial Report]," and "any privileges not expressly waived by the City Council [were] implicitly waived by the leak which made [the Workplace Reports], including the supplemental report, available to the public."

With that district court order in hand, Miller moved the trial court to grant summary disposition in his favor. The trial court agreed on the bases that (1) the City's claims were barred by the applicable statute of limitations, and (2) it waived privilege as to the Supplemental Report. In so doing, the trial court emphasized that the City council publicly discussed the Workplace Reports, and, in its view, someone intentionally released the Supplemental Report into the public domain by uploading it to the City's website even though the City ultimately took it down shortly thereafter. The trial court later found that the City's complaint was frivolous under MCL

600.2591(3)(a), granted Miller's motion for sanctions, and awarded Miller attorney fees and costs in the amount of $71,388.41 (which included attorney fees at a rate of $1,500 per hour for Miller's lead attorney). The City appeals.

## II. JURISDICTION

We briefly address jurisdiction. The City timely appealed as of right in May 2024 from the trial court's postjudgment award of sanctions. However, Miller asserts that because this Court reinstated his counterclaims a month later, we no longer have jurisdiction because his "counterclaims are now to be litigated before the trial court," and, therefore, "there is not a final order in place." We do not agree. Under MCR 7.203(A)(1), this Court has jurisdiction over the City's appeal of right from the trial court's entry of its "final judgment." And as defined, "final judgment" means, as applicable here, "a postjudgment order awarding . . . attorney fees and costs under court rule or other law." MCR 7.202(6)(a)(iv). Nothing in our opinion reversing the trial court's dismissal of Miller's counterclaims undermines the City's appeal concerning the trial court's order awarding attorney fees.

## III. ANALYSIS

On appeal, the City does not take issue with the trial court's grant of summary disposition in Miller's favor. Instead, it contends only that the trial court erroneously determined that the City's breach-of-fiduciary-duty claim against him was frivolous. We agree.

## A. WAIVER OF PRIVILEGE

The trial court's determination of frivolousness depended exclusively on its conclusion that the City waived attorney-client privilege as to the Supplemental Report. This Court decides de novo whether a party waived attorney-client privilege. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011); *Leibel v Gen Motors Corp*, 250 Mich App 229, 240; 646 NW2d 179 (2002). However, it "grants more deference to a trial court's decision whether the facts of a particular case demonstrate a valid waiver of the privilege . . . ." *Leibel*, 250 Mich App at 240 n 13.

"The attorney-client privilege is personal to the client, and only the client can waive it." *Id*. at 240. Under Michigan caselaw, a waiver of this privilege can only be accomplished through a "true waiver," meaning "an intentional, voluntary act" that "cannot arise by implication," or "the voluntary relinquishment of a known right[.]" *Franzel v Kerr Mfg Co*, 234 Mich App 600, 616; 600 NW2d 66 (1999) (quotation marks omitted), quoting *Sterling v Keidan*, 162 Mich App 88, 91; 412 NW2d 255 (1987). Accordingly, "a waiver of the privilege does not arise by accident," *Leibel*, 250 Mich App at 240, and "the fact that confidential information has been published does not automatically waive the attorney-client privilege," *id*. at 241. Notably, this privilege has a dual nature—the "security against publication" and the right to control introduction of the information into evidence. *Id*. at 240. Though inadvertent disclosure of privileged information does not necessarily destroy a party's right to control its introduction into evidence, it may "eliminate[] any security against publication." *Franzel*, 234 Mich App at 616. However, "[a]t the very least, waiver through inadvertent disclosure should require a finding of no intent to maintain confidentiality or circumstances evidencing a lack of such intent." *Sterling*, 162 Mich App at 96. Finally, "[e]rror

of judgment where the person knows that privileged information is being released but concludes that the privilege will nevertheless survive will destroy any privilege." *Leibel*, 250 Mich App at 241 (citations omitted).

As Miller notes, "[o]nce otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears." *Leibel*, 250 Mich App at 242 (quotation marks omitted; alteration in original), quoting *Oakland Co Prosecutor v Dep't of Corrections*, 222 Mich App 654, 658; 564 NW2d 922 (1997). But Michigan courts have also "strongly repudiated the theory that once the confidential information ha[s] been published, the privilege of objecting to its repetition ha[s] been waived . . . ." *Leibel*, 250 Mich App at 242 (quotation marks and citations omitted; alterations and omission in original). Moreover, "[w]hile courts in a minority of jurisdictions have held that any public disclosure of otherwise privileged documents destroys the privilege because the information is no longer confidential, the courts of our state clearly hold otherwise." *Id*. at 242-243.

When making its waiver determination, the trial court erroneously relied on the federal court's order to conclude that the City waived its privilege because, in the trial court's words, "[t]he barn door has been open[ed]." But as set forth, *Leibel* precludes such a broad view of waiver—i.e., that it is in the public domain and therefore there is nothing one can do. That failure notwithstanding, the trial court nonetheless touched on whether the disclosure was inadvertent, stating: "[I]t's not even clear that the disclosure was inadvertent because they said we're gonna put it out there. Someone within the governmental agency took the steps to push the button and make it public and it was public and . . . even though it didn't stay open for [a] long time, it was up there . . . . [T]he fact of the matter remains everything . . . did get out." In the trial court's view, because the City released the Supplemental Report on its website, "everybody ha[d] it" and it had likely "circulated far and wide." According to the trial court, Miller "circulated [it] far and wide, shortly after it landed in the public domain." Upon de novo review of this record and giving due deference to its underlying factual determinations, we cannot agree. *Leibel*, 250 Mich App at 240 & n 13.

The best piece of evidence in support of the trial court's decision was the then-mayor's indication at the September 2018 public council meeting that the council would release "everything" it had received, which would have included the Supplemental Report. Yet, in almost the same breath, she also stated that it would release "exactly what [the council] received at that closed meeting on that Tuesday night," which would not have included the Supplemental Report. The accompanying meeting minutes do not alleviate this ambiguity, stating only that "it was resolved to approve waiving the privileged and confidential status and release the Workplace Evaluation." Indeed, several council members attested that they understood the council vote to apply only to the Initial Report and, further, that the council never otherwise waived privilege as to the Supplemental Report. And, though someone working for the City posted an unredacted copy of the Supplemental Report on its website, it was swiftly removed. This prompt removal further supports the City's position that waiver of privilege for the Supplemental Report was not intended.

Moreover, while the publishing of the Supplemental Report may have eliminated "any security against publication," *Franzel*, 234 Mich App at 616, the City did not bring this lawsuit

against an individual who disseminated the Supplemental Report after obtaining it through publicly-available means. Rather, it sued Miller, who received the Supplemental Report by virtue of his role as a councilman and not via the inadvertent disclosure. As part of his role as a councilman, the Employee Handbook "strictly prohibited" him "from disclosing information or documents obtained through the course of [his] tenure as a council member . . . to unauthorized persons . . . ." The Employee Handbook created an additional duty on Miller prohibiting him from independently releasing the information without council authorization. To be sure, the attorney-client privilege attached to the Workplace Reports is held by the City vis-à-vis the council; only the council, by majority vote, may waive the privilege.

In sum, the record is, at best, ambiguous regarding whether the council intended to waive privilege for, and publicly release, the Supplemental Report. For this reason, there lacks evidence supporting a finding that the City did not intend to maintain the confidentiality of the Supplemental Report, *Sterling*, 162 Mich App at 96, or that it intentionally released the Supplemental Report under the erroneous belief that the attached privilege would survive, *Leibel*, 250 Mich App at 241.

## B. FRIVOLOUSNESS

With that conclusion in hand, we turn to the trial court's frivolousness determination. "This Court reviews for clear error a trial court's finding that a civil action was frivolous." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 319; 14 NW3d 472 (2023). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 145-146; 946 NW2d 812 (2019) (quotation marks and citation omitted). "To the extent that the trial court had discretion to order a sanction, this Court reviews the trial court's exercise of discretion for abuse." *Tolas*, 347 Mich App at 319. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pioneer*, 330 Mich App at 145 (quotation marks and citation omitted).

Under MCL 600.2591(1), "if a court finds that a civil action . . . was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." A civil action is frivolous, for purposes of this section, if at least one of three conditions exists: (i) "[t]he party's primary purpose in initiating the action . . . was to harass, embarrass, or injure the prevailing party," (ii) "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or (iii) "[t]he party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a). "Whether a claim was frivolous must be determined using an objective standard considering the circumstances concerning the claim at the time it was asserted." *Tolas*, 347 Mich App at 321. This is a factual determination largely dependent "on the particular facts and circumstances of the claim involved." *Bradley v Frye-Chaiken*, 514 Mich 679, 709; 22 NW3d 458 (2024). Notably, "[i]f the trial court goes beyond assessing the merits of a legal position, such as when a trial court finds that an action was brought for an improper purpose, this Court must defer to the trial court's superior position to judge the parties and the evidence." *Tolas*, 347 Mich App at 321.

Here, the trial court found that the City's complaint met all three frivolousness conditions set forth in MCL 600.2591(3)(a).[1] As to the first condition, it found that the City's primary purpose in filing its complaint was to "harass" Miller. But it equivocated when doing so—though the trial court did not know why the City "came after" Miller, it believed the City "probably" did so because he "went to the Michigan state police to try to seek some relief." Nothing in the record supports this conclusion. To be sure, the Supplemental Report was briefly available to the public, but Miller obtained the Supplemental Report through his position as a councilman and thus owed different duties to the City relative to these materials than would a general member of the public who obtained it through other means. The City's complaint, grounded in breach-of-fiduciary-duty allegations based on Miller's dissemination of the Supplemental Report and its contents, aligns with this reality. On the record before us, even giving deference to the trial court's better ability to judge the parties and their evidence, *Tolas*, 347 Mich App at 321, there is insufficient evidence to conclude that the City initiated this action against Miller *primarily* for an improper purpose, MCL 600.2591(3)(a)(*i*).

Regarding the second condition, the trial court found that the City had no reasonable basis to believe the facts underlying its legal position were true because it, along with "[e]verybody," knew the Workplace Reports were "out there" when it took legal action against Miller. As already discussed in detail, however, the record is ambiguous regarding whether the council voted to waive privilege and confidentiality as to the Supplemental Report, specifically, and the public availability of the Supplemental Report did not necessarily render Miller's subsequent dissemination of it proper. Moreover, while an open question not before us today, Miller arguably owed the City a duty under the Employee Handbook policy and arising from his elected position to not disclose the Supplemental Report. Considering this, we cannot agree with the trial court that the City lacked a reasonable basis to believe the facts underlying its legal position for purposes of MCL 600.2591(3)(a)(*ii*).

Finally, the trial court found that the City's legal position lacked any merit under MCL 600.2591(3)(a)(*iii*) because (1) the City waived privilege as to the Supplemental Report when it publicly discussed the Workplace Reports at the council meeting and, later, when someone from the City released the Workplace Reports into the public domain (regardless of whether the City ultimately removed them from its website); and (2) its claims against Miller were barred by the statute of limitations. We have already discussed why the reasons underlying the trial court's first basis are unconvincing. As for the second, the parties do not dispute that the City's claims were subject to a three-year statute of limitations; rather, they disagree regarding when its claims accrued. "A claim of breach of fiduciary duty or breach of trust accrues when the beneficiary knew or should have known of the breach." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005) (quotation marks and citations

---

[1] In its order, the trial court found that the City's complaint was frivolous "pursuant to MCL 600.2591(3)(a)(b) and (c), for the reasons stated on the record." However, under MCL 600.2591(3), subsection (a) sets forth three conditions of frivolousness, in subparts (*i*) through (*iii*); subsection (b) defines "[p]revailing party," as used in the statute; and there is no subsection (c). Considering this, together with the trial court's reasoning on the record, it appears the trial court intended to reference MCL 600.2591(3)(a)(*i*)-(*iii*).

omitted). "[A] plaintiff is deemed to be aware of a possible cause of action when he becomes aware of an injury and its possible cause." *Id.* at 48 (quotation marks and citation omitted; alteration in original).

Miller's view, which the trial court adopted, is that the City's claims must have accrued before the public availability of the Supplemental Report in September 2018, making its February 2022 complaint untimely. The City contends, to the contrary, that its claims did not begin to accrue until it learned of Miller's dissemination of the Supplemental Report after his June 2019 interview with the Michigan State Police. We agree with the City. Again, the public availability of the Supplemental Report does not necessarily preclude the City's claims against him. Miller's dissemination of the Supplemental Report to the Michigan State Police did not occur until June 2019, at which time he also disclosed his earlier dissemination the Supplemental Report to various state agencies and officials. Miller makes no claims that the City knew or should have known of these distributions before his June 2019 police interview, and we find no support for such a conclusion in the record. Accordingly, the City's earliest claims against Miller accrued in June 2019, and its complaint against him was therefore timely.

In sum, we are left with a definite and firm conviction that the trial court erred by finding the City's action against Miller frivolous under MCL 600.2591. *Tolas*, 347 Mich App at 319; *Pioneer*, 330 Mich App at 145-146.[2]

### III.  CONCLUSION

For these reasons, we vacate the trial court's order imposing sanctions against the City. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock

---

[2] In light of our resolution of this issue, we do not consider the City's separate issue concerning whether the trial court appropriately determined the amount of sanctions, including whether it erred in determining Miller's attorney was entitled to $1500/hour.